**In re KALAMAZOO BLDG. CO.**

**In re SCHRAM.**

**No. 7034.**

District Court, W. D. Michigan, S. D.
Oct. 20, 1937.

Mason, Sharpe & Stratton, of Kalamazoo, Mich., and Warner, Norcross & Judd, of Grand Rapids, Mich., for debtor.

Joseph Folz and Lucien Sweet, both of Kalamazoo, Mich., for receiver of the Bank of Kalamazoo.

Robert S. Marx and Lawrence I. Levi, both of Detroit, Mich., for objectors.

RAYMOND, District Judge.

This matter is before the court upon exceptions of B. C. Schram, receiver of the First National Bank—Detroit, intervener herein, to the report of the special master recommending approval of debtor's proposed plan of reorganization with certain amendments. Very careful examination of the record, considered in the light of briefs filed both with the special master and with the court and of oral argument thereon is convincing that the exceptions under consideration should be overruled and that the report of the special master should be approved. In view of the completeness of the special master's report, restatement here of the history of the case and of the issues involved is unnecessary.

Objector clearly states in his final brief that his first and principal objection is to the allowance of the claim of the receiver of the Bank of Kalamazoo. He urges that that bank is not entitled to be considered a creditor in any amount and is therefore not entitled to participate, by way of compromise or otherwise, in the proceeds of the plan of reorganization. He insists that the court must pass upon objections which have been filed to the allowance of the claim before passing upon the fairness or feasibility of the proposed plan of reorganization which gives to the receiver of the bank $150,000 in new securities. It is to be noted, however, that $50,000 of the securities is given primarily for what appears from the record to be full and valuable consideration. The manifest fact is that if the plan is approved the receiver of the Bank of Kalamazoo obtains $100,000 of the general mortgage bonds issued in pursuance of the plan, as a compromise settlement of a claim of approximately $410,000.

The bondholders' committee argues that the reorganization plan recommended and approved by the requisite majority is worth more to the bondholders than the probability that after a long period of litigation the bank's claim may be held invalid, or, as an alternative, that it will be subordinated to the claims of other creditors of the Kalamazoo Building Company. It is urged that the uncertainty inherent in all litigation with the certainty of expenses and delay involved therein results in the justifiable belief on the part of the large majority of bondholders that the reorganization plan is for the best interests of all concerned. The committee insists that the plan should not be disapproved at the instance of the one objecting creditor who is the owner only of approximately 4 per cent. of the first mortgage bonds.

The compromise plan of reorganization here submitted is the result of sincere and long-continued efforts to evolve a plan which would be for the best interests of all concerned. In all probability, if a plan of reorganization must await the outcome of pending litigation, all must suffer loss thereby. The two principal evils of former methods of reorganization of corporations near the margin of solvency were expensive and long-continued litigation and forced sales of assets with accompanying extinction of going values. One of the principal advantages sought by enactment of section 77B, Bankr.Act, 11 U.S.C.A. § 207, was the elimination of these long delays and of the deplorable tendency of receiverships and of those bankruptcy estates in which a condition of near solvency existed to become exhausted through prolonged litigation, the purpose of which was to establish the relative rights of various classes of creditors. The payment of incident administrative expenses frequently led to exhaustion of the assets to the substantial detriment of all those who originally had valuable interests. Such proceedings were the legal equivalent of successful operations which result in the patients' decease. It must be recognized that termination of litigation is an important factor in the preservation of assets. Several courts have recognized the propriety of compromise of conflicting claims in similar proceedings. In re Burns Bros., D.C., 14 F.Supp. 910; In re McCrory Stores Corporation, D.C., 14 F.Supp. 739; In re Anchor Post Fence Co., D. C., 14 F.Supp. 801.

It is and must be conceded that upon the record before the court substantial basis exists for the belief that the claim of the receiver of the Bank of Kalamazoo to a prior lien and possibly to any claim whatever might not be sustained. The record is equally clear that the claim

may possess merit and that upon a complete record it might be established in whole or in part. The uncertainty in the law relative to claims of closely affiliated corporations is discussed in an article published in the Yale Law Journal, June 1936, page 1471, and in the Michigan Law Review, January 1937, page 467. The recent case of Finley v. Union Joint Stock Land Bank, 281 Mich. 214, 274 N.W. 768 (decided Sept. 1, 1937), wherein a decree of the lower court was reversed, is informative on this subject. There the decree of the circuit court was based upon the contention that the investment company was a subsidiary created, maintained, and operated by the bank for its own benefit and profit. The following principles were there recognized which are pertinent to the issues present in the instant case:

"Before the corporate entity may be properly disregarded and the parent corporation held liable for the acts of its subsidiary it must be shown not only that undue domination and control was exercised by the parent corporation over the subsidiary, but also that this control was exercised in such a manner as to defraud and wrong the plaintiff and that unjust loss or injury will be suffered by the complainant as the result of such domination unless the parent corporation be held liable."

"A parent corporation does not lose its immunity as a stockholder simply by furnishing from its own personnel the directors and principal officers of the subsidiary."

"A claimant of a subsidiary corporation is estopped to claim parent corporation used subsidiary as a mere instrumentality if, with knowledge of all the facts at time of transaction with the subsidiary, he accepted or approved the relationship between the two corporations."

See, also Shepherd v. Banking & Trust Co. of Jonesboro, 6 Cir., 79 F.2d 767; Commerce Trust Co. v. Woodbury, 8 Cir., 77 F.2d 478; Gillis v. Jenkins Petroleum Process Co., 9 Cir., 84 F.2d 74; In re Fox West Coast Theatres, 9 Cir., 88 F.2d 212. Consideration of the foregoing authorities is convincing that conclusions concerning the invalidity or deferred status of such claims in question may not be indulged in with confidence until after presentation and consideration of all the issues involved. As already indicated, the court is of the opinion that a compromise of these issues does not militate against the conclusion reached by the master that the plan is fair and equitable. The other issues presented are sufficiently covered by the master's report.

An order may be presented for signature pursuant to the report of the special master.