FINLEY v. UNION JOINT STOCK LAND BANK OF DETROIT.

1. CORPORATIONS—PARENT AND SUBSIDIARY—SEPARATE ENTITY—CON-
SUMMATION OF A WRONG.

Before the corporate entity may be properly disregarded and the
parent corporation held liable for the acts of its subsidiary it
must be shown not only that undue domination and control was
exercised by the parent corporation over the subsidiary, but
also that this control was exercised in such a manner as to de-
fraud and wrong the plaintiff and that unjust loss or injury
will be suffered by the complainant as the result of such domi-
nation unless the parent corporation be held liable.

2. SAME—RELIEF AGAINST PARENT CORPORATION.

Relief against a parent corporation should be granted only if a
refusal to do so would result in an unjust loss or injury to the
complainant since a refusal to recognize the ordinary immunity
of stockholders not only overturns a basic provision of statu-
tory or common law but is also contrary to a vital economic
policy underlying the whole corporate concept.

3. SAME—PARENT AND SUBSIDIARY—OFFICER AND DIRECTOR PERSON-
NEL.

A parent corporation does not lose its immunity as a stockholder
simply by furnishing from its own personnel the directors and
principal officers of the subsidiary.

4. SAME—JOINT STOCK LAND BANK—INVESTMENT COMPANY—TRUST
COMPANY—SEPARATE ENTITY.

Investment company, organized by directors and attorney of joint
stock land bank which had been organized under statute re-
stricting its loans to first mortgages on farm lands, as a sepa-
rate profit-sharing corporate entity to make loans on chattel
mortgages, farm equipment, live stock and second mortgages
on farms and which used the same offices, clerical force and
real estate appraisers but filed its own annual reports, kept its
own minutes of its meetings and profits, if any, were to go to
its stockholders and which borrowed money from trust com-

pany *held,* not a subsidiary so controlled, dominated or operated as to make bank responsible for its debts to trust company's liquidating trustees where investment company refused some loans referred to it by bank, trust company's representative passed upon all loans before advancing money therefor and itself had stock in investment company and more or less controlled its affairs (12 USCA, chap. 7, §§ 811, 818).

5. Same—Separate Entity—Creditors—Notice.

A creditor is not permitted to go behind the corporate organization and charge the individual stockholders where he has contracted with his eyes open and is charged with actual and constructive notice of the limitations upon the corporation's liability.

6. Same—Parent and Subsidiary—Creditors—Estoppel.

A claimant of a subsidiary corporation is estopped to claim parent corporation used subsidiary as a mere instrumentality if, with knowledge of all the facts at time of transaction with the subsidiary, he accepted or approved the relationship, between the two corporations.

7. Same—Parent and Subsidiary—Creditors—Fraud—Evidence.

In suit by liquidating trustees of trust company which was creditor of an investment company that had been organized by the directors of a joint stock land bank to charge latter with amount owed it by investment company, record *held,* without evidence of fraud or wrongdoing to trust company by reason of the relationship existing between the parent and its subsidiary entitling trustees to relief (12 USCA, chap. 7, §§ 811, 818).

8. Same—Parent and Subsidiary—Separate Entity—Officer and Director Personnel—Fraud.

The separate corporate entities of a parent and subsidiary corporation will not be disregarded and the parent corporation will not be held liable for the acts and obligations of its subsidiary corporation, notwithstanding the facts that the latter was controlled by the parent through its stock ownership, and that the officers and directors of the parent corporation were likewise officers and directors of the subsidiary, in the absence of proof that the subsidiary was formed for the purpose of perpetrating a fraud and that domination by the parent corporation over its subsidiary was exercised in such manner as to defraud complainant.

Appeal from Wayne; Toms (Robert M.), J. Submitted June 17, 1937. (Docket No. 62, Calendar No. 39,563.) Decided September 1, 1937. Rehearing denied October 13, 1937.

Bill by Edward B. Finley, Jr., and others, as liquidating trustees of Union Guardian Trust Company, against Union Joint Stock Land Bank of Detroit, a corporation, to charge defendant with obligation of Central States Investment Corporation. Bill by defendant against plaintiffs for allowance of general claim. Cases consolidated for trial and appeal. Decree for plaintiff. Defendant appeals. Reversed and decree ordered entered for defendant.

*Lightner, Crawford, Sweeny, Dodd & Toohy (Clifford M. Toohy, of counsel), for plaintiff.*

*Beaumont, Smith & Harris (Hal H. Smith and Lewis S. Robinson, of counsel), for defendant.*

Sharpe, J. This is a suit in chancery instituted by plaintiffs as liquidating trustees of the Union Guardian Trust Company, formerly the Union Trust Company, against the defendant, Union Joint Stock Land Bank of Detroit, to charge defendant with liability for certain advances made by the trust company to the Central States Investment Corporation, a Michigan corporation. The Union Joint Stock Land Bank is a corporation organized under the Federal Farm Loan Act (12 USCA, chap. 7, § 811). Under the above act the corporation is forbidden to make loans except on first mortgages on farm lands. 12 USCA, chap. 7, § 818. After operating for some time the officers and directors of the land bank deemed it advisable to form a separate corporation

and as a result the Central States Investment Corporation was organized with power to make loans on chattel mortgages, farm equipment, live stock, as well as second mortgages on farms. The investment company had an authorized capital of $10,000 of which $1,000 was paid in. The officers and directors of this latter company were John N. Stalker, president, O. P. Gossard, vice-president, Merrill C. Adams, secretary and treasurer, Edward Frensdorf and H. C. Bulkley. The members of this group were also members of the board of directors of the land bank; and Alfred Masters was attorney for both corporations. Adams and Stalker were officers of the Union Company, an investment affiliate of the Union Trust Company. All of the stock of the Union Company was owned by the stockholders of the Union Trust Company. The land bank and investment company used the same offices, the same clerical force and the same real estate appraisers. In order to make loans, the investment company made arrangements with the Union Trust Company to advance the money and these loans were carried by the trust company as a trust account and reached an aggregate at one time of about $12,000. In 1929, the operations of the investment company were found to be unprofitable and it was decided to dissolve the corporation. In 1931, a group of stockholders in the Guardian Detroit Union Group, of which the trust company was a member, relinquished their stock holdings in the Guardian Detroit Union Group in exchange for the stock of the land bank resulting in the removal of the land bank from any connection with the trust company.

The trial court who heard the cause entered a decree finding that the defendant was indebted to the plaintiff in the sum of $9,726.25 with interest from

May 30, 1932. Defendant appeals and contends that
the land bank, owning no stock of the Central States
Investment Corporation, cannot be held liable as a
parent corporation upon the obligation of Central
States Investment Corporation as its subsidiary;
that the land bank did not so dominate or control the
Central States Investment Corporation as to be lia-
ble for the latter's debts; that no liability exists be-
cause of an entire absence of fraud, wrong or in-
justice committed by defendant company against
plaintiffs; that plaintiff company may not recover
from the land bank as it knew of and accepted the
relationship between the land bank (the parent cor-
poration) and the investment company, its subsidi-
ary; that to hold the land bank liable for the debts
of the investment company is to fasten upon the land
bank a liability which the Federal statutes prohibit,
would be *ultra vires* and unenforceable.

Plaintiff contends that the investment company
was a subsidiary created, maintained and operated
by the land bank for its own benefit and profit; and
that equity has the power to look through the ficti-
tious form of that relationship to its real substance;
and that a corporation may not avail itself of the de-
fense of *ultra vires* when it would not advance jus-
tice, but on the contrary, would accomplish a legal
wrong.

The general rule as to when the courts will disre-
gard the separate corporate existence of the sub-
sidiary and hold the parent corporation liable for its
obligations is well stated in *Gledhill* v. *Fisher & Co.*,
272 Mich. 353, 357 (102 A. L. R. 1042), where we
said:

"Before the corporate entity may be properly dis-
regarded and the parent corporation held liable for
the acts of its subsidiary, I believe it must be shown

not only that undue domination and control was exercised by the parent corporation over the subsidiary, but also that this control was exercised in such a manner as to defraud and wrong the complainant, and that unjust loss or injury will be suffered by the complainant as the result of such domination unless the parent corporation be held liable. The rule is correctly stated by Ballentine in an article on the separate entity of corporations, in 60 American Law Review, page 28, as follows:

" 'But to justify treating the sole stockholder or holding company as responsible it is not enough that the subsidiary is so organized and controlled as to make it "merely an instrumentality, conduit or adjunct" of its stockholders. It must further appear that to recognize their separate entities would aid in the consummation of a wrong.'

"In Powell on 'Parent and Subsidiary Corporations,' extensively quoted by both parties to this suit, the proper limitation on the rule is stated on page 6 of the text as follows:

" 'A refusal to recognize the ordinary immunity of stockholders not only overturns a basic provision of statutory or common law, but is also contrary to a vital economic policy underlying the whole corporate concept. Such a result must therefore be viewed as an extraordinary exception and should be permitted only in cases in which it is necessary in order to promote justice. Relief against the parent corporation, therefore, should be granted only if a refusal to do so would result in an unjust loss or injury to the complainant.' "

In Powell on Parent and Subsidiary Corporations, it is said on page 5:

"Mere manipulation of the subsidiary in violation of its legal requirements should not therefore be sufficient to establish the parent corporation's liability for the acts of its subsidiary. It must be shown that the control over the subsidiary was exercised by the parent corporation in such a manner as to defraud or wrong the complainant. If no wrong has been done to the complainant, the parent corporation should not be made to respond simply because it has exercised undue control over the subsidiary."

On page 12 it is said:

"If, therefore, the degree of control exercised by the parent corporation is not sufficient to constitute the subsidiary a mere instrumentality, the further fact that the parent corporation caused the subsidiary to be organized will not force the case over the line."

In connection with the identity of officers and directors, the author, on page 10, says:

"It is also clear that the parent corporation does not lose its immunity as a stockholder simply by furnishing from its own personnel the directors and principal officers of the subsidiary. In the case of principal subsidiaries this is the usual practice."

In the case at bar the land bank did not own directly or indirectly any stock in the Central States Investment Corporation. The investment company had an independent corporate existence and charter; it filed its annual reports; kept its own minutes of its meetings and from time to time it held meetings of its stockholders and directors. It was organized as a profit-sharing corporation; the profits, if any, were to go to its individual stockholders. The relationship existing between this corporation and the land bank was such that when the investment company made a loan on real estate or purchased realty subject to the first mortgage held by the land bank it used its own judgment as to what loans it would make. The record shows that upon some occasions it refused loans submitted to it by officers of the land bank; however, when loans were made the officers of the trust company passed upon such investment before the money was advanced to the investment company and upon the completion of the loan the security was assigned to the trust company. It is true that Gossard was both vice-president of the invest-

ment company and the land bank and together with Masters who was attorney for the land bank handled the details of each transaction; and that a substantial part of the advances that were made by the trust company were used to pay taxes, insurance, interest and accrued instalments on land bank loans. But it is also true that each advance made by the trust company was checked by Steele of the trust company who was entirely independent of the land bank. In the final analysis the trust company determined whether or not the advances should be made. It is also a matter of record that the Union company was owned and controlled by the trust company. This company, the Union Company, owned four of the 12 shares of stock of the investment company and thereby had a direct interest and control into the affairs of the investment company. The relationship of the trust company to the investment company was such that the trust company knew the details of the affairs of the investment company and more or less controlled its operations. In *Gledhill* v. *Fisher & Co., supra,* 363, we said:

"To permit a creditor who contracted with his eyes open and charged with actual and constructive notice of the limitations upon the corporation's liability to go behind the corporate organization and reach the property of individual stockholders is to overturn the entire historic and legal conception of a private corporation, and its effect to discourage the joint venture of combined capital in industrial enterprises and to discourage ventures in business and commercial enterprises."

It is further said in Powell on Parent and Subsidiary Corporations, p. 83:

"A claimant of the subsidiary corporation cannot be said to have been affected by the parent's use of

the subsidiary as a mere instrumentality, if with knowledge of all the facts at the time he entered into the transaction with the subsidiary, he accepted or approved the relationship between the two corporations.''

In a search of the record we are unable to find any instance of fraud or wrongdoing to the trust company by reason of the relationship existing between the parent and its subsidiary.

In *North* v. *Higbee Co.* (syllabus), 131 Ohio St. 507 (3 N. E. [2d] 391), the court held:

''The separate corporate entities of a parent and subsidiary corporation will not be disregarded and the parent corporation will not be held liable for the acts and obligations of its subsidiary corporation, notwithstanding the facts that the latter was controlled by the parent through its stock ownership, and that the officers and directors of the parent corporation were likewise officers and directors of the subsidiary, in the absence of proof that the subsidiary was formed for the purpose of perpetrating a fraud and that domination by the parent corporation over its subsidiary was exercised in such manner as to defraud complainant.''

In view of our holding in this cause we find it unnecessary to decide other questions raised. The decree of the trial court is reversed, the bill of complaint dismissed and the cause remanded to the court below to enter a decree in cause No. 253002 in the sum of $1,087.50 as a general claim against plaintiff and in favor of defendant. Defendant may recover costs.

Fead, C. J., and North, Wiest, Butzel, Potter, and Chandler, JJ., concurred. Bushnell, J., did not sit.