KLAGER v ROBERT MEYER COMPANY

Docket No. 64686. Argued June 2, 1981 (Calendar No. 3).—Decided
December 23, 1982.

Wayne G. Klager, Marjorie Klager, and Gretchen J. Meyer
brought an action in the Washtenaw Circuit Court against the
Robert Meyer Company, Packard Platt Plaza, Inc., Benjamin H.
Rabin, Meyer C. Weiner, and Joshua T. Weiner, to collect rent
and real estate taxes due under the terms of a lease of vacant
land. The circuit court, Edward D. Deake, J., following a bench
trial, entered judgment for the plaintiffs for unpaid rent and
real estate taxes against the partnership and the corporation
and against Meyer Weiner and Benjamin Rabin, partners in
the Robert Meyer Company and stockholders of Packard Platt
Plaza, Inc., and Joshua Weiner, a stockholder of Packard Platt,
personally. The Court of Appeals, D. C. Riley and Quinnell, JJ.
(Bronson, P.J., concurring in part and dissenting in part),
affirmed (Docket No. 78-4465). The defendants appeal, arguing
that the lease had been assigned to Packard Platt with the
knowledge and consent of the plaintiffs before it had become
legally effective, precluding personal liability. The plaintiffs
contend that under an escrow agreement the defendants' fail-
ure to cancel the lease bound them personally and that Pack-
ard Platt was undercapitalized at the time of the assignment,
making the assignment an impermissible attempt to evade
liability.

In an opinion by Justice Levin, joined by Chief Justice
Fitzgerald and Justices Kavanagh, Williams, Coleman, and
Ryan, the Supreme Court *held:*

The assignment of the lease by the partnership lessee with
the knowledge and consent of the lessors to an undercapitalized
corporation in which the partners held stock was not a fraud or
an attempt to evade the law, but was a means of perpetuating
the original understanding of the parties. On the facts of the

REFERENCES FOR POINTS IN HEADNOTES
[1] 49 Am Jur 2d, Landlord and Tenant § 435.
[1, 2] 60 Am Jur 2d, Partnership §§ 158, 168.
[2] 49 Am Jur 2d, Landlord and Tenant §§ 421, 469.
[3] 49 Am Jur 2d, Landlord and Tenant § 613.

case, the partners are not personally liable for unpaid rent under the lease.

1. The lease was assigned to Packard Platt before the obligation to pay rent commenced, and the plaintiffs' attorney was advised of the corporation's undercapitalization and that the purpose of the assignment was to limit the personal liability of the partners. At the time of the assignment, before the lease became legally effective, the partners had an option to rescind the lease. The plaintiffs, recognizing that unless they agreed to the assignment the partners would exercise the option, consented to the assignment.

2. The lease was obtained by the partnership for the purpose of developing a shopping center. The land was comprised of two parcels, one zoned for commercial use and one restricted to residential use. The parties understood that development of the land depended on rezoning of the residential parcel. The lease provided for a fixed-sum rent and an additional percentage of the rent paid by subtenants once the shopping center was in operation. The lease was delivered into escrow with the understanding that it would become legally effective only upon rezoning of the land and that should rezoning not occur the partnership retained an option to cancel it. No period of time was specified after which the option would lapse. The lease was released from escrow on the date the assignment and the consent to the assignment were executed. After efforts to have the property rezoned failed and other attempts to develop the property proved futile, the project was abandoned.

3. The partners' failure to cancel the lease did not bind them personally. A pre-existing obligation was not assigned to Packard Platt; rather, the assignment was made at a time when the lease was not legally effective and the partnership had an option to rescind all liability under it. The plaintiffs were not victimized by an abuse of the corporate form; the partners merely exercised their bargaining power, bypassing the option to cancel in favor of negotiations which led to the assignment and the lessors' written consent to it. At the outset, the parties shared the risk of developing the property. The partners, in not rescinding the lease, in accepting its release from escrow, and in assigning it to Packard Platt, manifested their purpose and intent not to assume personal liability; the plaintiffs, by accepting the assignment, demonstrated agreement with that purpose.

Reversed.

95 Mich App 319; 290 NW2d 132 (1980) reversed.

1. ASSIGNMENTS — LEASES — PARTNERSHIPS — CORPORATIONS —
   FRAUD.

   The assignment of a lease, before it became legally effective, by a
   partnership lessee to an undercapitalized corporation in which
   the partners held stock, with the knowledge and consent of the
   lessors, was not a fraud or an attempt to evade the law, where
   the lessors knew that the intent was to limit the liability of the
   original lessees.

2. ASSIGNMENTS — LEASES — PARTNERSHIPS — CORPORATIONS —
   PERSONAL LIABILITY.

   Partners-lessees who assigned a lease, before it became legally
   effective, to an undercapitalized corporation in which they held
   stock, with the knowledge and consent of the lessors, for the
   purpose of avoiding personal liability in exchange for not
   exercising an option to rescind the lease were not personally
   liable for payment of rent under the lease.

3. ASSIGNMENTS — LEASES — PROPERTY — RISK OF LOSS.

   The parties to a lease of property which provided for payment of
   a fixed rent for the duration of the lease and an additional
   percentage amount based on the rent to be paid by subtenants
   after the property was rezoned and developed shared the risk
   at the outset that the effort to develop the property might
   prove futile.

*Ulrich, Pear, Barense & Eggan, P.C.* (by *Andrew M. Eggan*), for plaintiffs.

*Clark, Hardy, Lewis, Fine & Pollard, P.C.* (by *A. Bart Lewis*), for defendants.

LEVIN, J. The plaintiffs are the landlord under a 50-year lease with the defendant Robert Meyer Company, a partnership. The lease was of vacant land and was entered into to develop a shopping center in Ann Arbor. The development fell through when efforts to rezone part of the parcel and to obtain building permits on the rest failed.

Before the lease became "legally effective", the partnership, with the consent of the landlord, assigned the lease to a corporation with capitaliza-

tion of $1,000 which assumed "due performance" of the tenants' obligations under the lease.

The trial judge, sitting without a jury, "pierced the corporate veil" and entered a judgment for unpaid rent and real estate taxes against the partnership, the corporation, and three stockholders of the corporation, two of whom were partners and one of whom was not.

We conclude that the trial judge clearly erred in finding for the plaintiff and that the Court of Appeals erred in affirming his decision.

The lease provided that upon an assignment, so consented to, the obligations on the part of the tenant "shall terminate" and "thereafter all liabilities and obligations shall be binding only upon the assignee".

At the time the assignment was executed, the partnership had the right, under the agreement of the parties, to rescind the lease and thereby avoid personal liability under the lease. The assignment was thus executed before the lease became "legally effective" and the obligation to pay rent or taxes commenced under the lease. The members of the partnership had no personal liability when the assignment was made.

The landlord's attorney was apprised of the thin capitalization of the assignee corporation, and that the purpose of the assignment was to limit the liability of the partners of the assignor partnership, and there is no suggestion that any of the defendants misrepresented either the capitalization of the assignee corporation or denied that their purpose in assigning was to relieve themselves of personal liability so that the lease need not be rescinded before the obligation to pay rent became effective.

The plaintiffs landlord, recognizing that unless

they consented to the assignment, the partnership, because of problems encountered in obtaining rezoning of the property, would exercise its option to rescind the lease, consented to the assignment to the undercapitalized corporation with knowledge that it was undercapitalized and that the purpose was to insulate the individuals involved in the defendant partnership from personal liability. The trial judge erred in piercing the corporate veil.

## I

Early in 1971, agents of the Robert Meyer Company, a partnership, approached the plaintiffs to secure a lease to develop a shopping center on ten acres of land in Ann Arbor, Michigan.

This land was comprised of two parcels, one zoned for commercial use, and the other restricted to residential use. From the outset of the lease negotiations, the parties understood that development of the entire tract depended upon rezoning the residential parcel.

By July, 1971, the details of the lease were made final. The parties agreed to a 50-year lease at an annual rent of $36,000. Besides this fixed sum, the lease provided that once the shopping center was in operation, plaintiffs would receive 15% of the rent from each of the subtenants.

Thereafter, the lease was placed in escrow to "become legally effective" if the land was rezoned.[1]

---

[1] The escrow agreement provided that the lease "was delivered to [the escrow agent] to be held for the mutual benefit of both landlord and tenant upon the following conditions:

"1. The lease shall become legally effective upon the subject premises being rezoned in its entirety to such category of commercial zoning provided for by the City of Ann Arbor to enable the intended development of the property to be successfully accomplished.

If it was not rezoned by January 3, 1972, the partnership had the option of cancelling the lease by delivering written notice. Failure to exercise the option was to operate as a waiver of the conditional delivery in escrow and render the lease binding. However, a time when the cancellation privilege would become inoperative was not specified. The lease was actually released from escrow on March 14, 1972, approximately a month after the February 17, 1972 date of the assignment and consent to assignment.[2]

In the ensuing months of 1971, the partnership's efforts to rezone the land aroused considerable local opposition. The rezoning problem was still unresolved as the deadline for cancelling the lease approached. The members of the partnership, Meyer Weiner and Benjamin Rabin, did not wish to terminate the lease since there was still a

"2. In the event that such rezoning shall not be accomplished by January 3, 1972, then, at the option of the tenant, the Robert Meyer Company, upon notice in writing being served upon the landlord, the subject lease shall be null and void of no legal force and effect. In such event all such lease documents executed by the parties shall be duly canceled and sufficient evidence of such cancellation transmitted to both parties.

"3. In the event that the Robert Meyer Company elects to waive the requirement of rezoning as stated above, such waiver to be implied by tenant's election not to serve the above described notice, then this lease shall be effective and binding upon the parties in accordance with the terms and conditions contained therein. In such event a fully executed duplicate original of the subject lease shall be delivered to the landlord and the tenant."

[2] A letter from one of the defendants to plaintiffs' lawyer dated February 29, 1972, indicates that, although the assignment is dated February 17, 1972, the plaintiffs had not, as of that date, signed the consent to the assignment. The letter states that a representative of the partnership and corporate defendants would shortly be in Ann Arbor and at that time would like to pick up both the executed assignment and an executed copy of the lease. It thus appears that what was contemplated was that the lease would be released from escrow at the same time that the executed copy of the assignment and consent to assignment was delivered. The lease did not take effect before the assignment and consent to assignment took effect.

possibility that the land might be rezoned. But, at the same time, they were unwilling to hazard personal liability on a lease which absent rezoning was valueless to them. To solve this dilemma, they approached plaintiffs' lawyer and requested assignment of the lease to a corporation created for the purpose of reducing their personal exposure. Unless such steps were taken, the partnership would exercise its rights under the escrow agreement and cancel the lease.[3] The parties signed an agreement dated February 17, 1972, assigning the lease to Packard Platt Plaza, Incorporated.[4]

[3] Mr. Rabin testified that the purpose of the assignment, as indicated to plaintiffs' attorney "by me, was to limit the liability, as much as we were uncertain at that point in time whether or not the project would, in fact, be able to go ahead, based on the problems we were having with the City of Ann Arbor."

The foregoing was followed by a further colloquy:

"*Q.* [Y]ou told [Mr. Klager's attorney] that the reason for the assignment was to limit the liability in light of the questionable result on the zoning efforts?

"*A.* Yes, we did."

The plaintiffs did not rebut this testimony.

[4] The document reads as follows:

"Assignment and Consent Agreement

"Whereas Wayne G. Klager and Marjorie Klager, husband and wife, and Gretchen J. Meyer, hereinafter referred to as landlord, enter into a lease dated June 10, 1971, for premises located at the northwest corner of Packard and Platt Roads, Ann Arbor, Michigan, with Robert Meyer Company, a partnership, hereinafter referred to as tenant, and

"Whereas Robert Meyer Company is now desirous of assigning all its right, title and interest in and under said lease to Packard Platt Plaza, Inc., a Michigan corporation, for the remainder of the lease term, and

"Whereas to effectuate this assignment, the Robert Meyer Company and Packard Platt Plaza, Inc., now seek the consent of said landlord to this assignment as provided for under the aforesaid lease.

"Now therefore by reason of the above, the following 'Assignment and Acceptance' and 'Consent to Assignment' are now entered into, accepted and approved by all parties hereto as noted by their signatures this 17th day of February, 1972, and Packard Platt Plaza, Inc., is now vested with all rights under the aforementioned lease and entrusted to all duties therein mentioned, applicable to the tenant.

"Assignment and Acceptance

"For value received, the Robert Meyer Company, assignor, hereby

Shortly after the lease assignment, the Ann Arbor Planning Commission refused to rezone the property. Instead of abandoning the project, the developers scaled down their plans and sought a building permit to develop a shopping center on the land already zoned for commercial use. To reflect this change, the parties orally agreed to modify the lease provisions. The non-commercial parcel was deleted from the lease, and the annual rent was cut from $36,000 to $18,000. Mr. Rabin testified without rebuttal that the plaintiffs at no time suggested that they need not agree to such a reduction because the defendants were, by reason of the release of the lease from escrow, personally liable despite the assignment to the corporation.

assigns all its right, title and interest in and to the above mentioned lease unto Packard Platt Plaza, Inc., assignee, its successors and assigns, and in consideration of this assignment said assignee hereby undertakes and assumes due performance of the obligations on tenant's part to be performed under the aforesaid lease to the end of the term thereof, including but not limited to the payment of all rents and the performance of all covenants and agreements contained in said lease, and the assignee hereby accepts this assignment.

"Witnessed by:                   Robert Meyer Company
/s/ Dorris F. Carpenter          By: /s/ Meyer C. Weiner,
/s/ Francie Leszutko             Partner (Assignor)

"Witnessed by:                   Packard Platt Plaza,
/s/ Dorris F. Carpenter             Inc.,
/s/ Francie Leszutko             a Michigan corporation
                                 By: /s/ Meyer C. Weiner
                                 President
                                 Attest: Benjamin H. Rabin,
                                 Secretary (Assignee)

                    "CONSENT TO ASSIGNMENT
    "Consent to the assignment of the aforementioned lease to Packard Platt Plaza, Inc., is hereby given and, in accordance with the provisions of said lease, *the undersigned landlord shall hereafter look to and recognize Packard Platt Plaza, Inc., a Michigan corporation, as the tenant under said lease.*
"Witnessed by:
/s/ Wayne G. Klager
/s/ Marjorie Klager
/s/ Gretchen J. Meyer" (Emphasis supplied.)
    For the pertinent language of the lease see fn 8.

The prospects for this smaller development project soon dimmed as well. The building permit application was not only denied, but the planning commission initiated a petition to return the commercial parcel to residential zoning. The developers filed a writ of mandamus in the circuit court to overturn the planning commission's decision. The writ was denied, and the Court of Appeals affirmed the denial. In April, 1976, this Court refused to grant leave to appeal.

After five years of effort and development expenditures in excess of $178,000, all attempts to develop the property had proved futile, and the developers had no alternative but to abandon the development plans.

Though appellants' unsatisfied rental obligation dates back to May 1, 1972, the time at which monthly rent became due under the terms of the lease, no attempt was made to enforce the lease until April 21, 1975, when an action was filed in the circuit court to collect back rent. Following a bench trial, judgment was entered against the defendants in the amount of $203,446.59. Meyer Weiner and Benjamin Rabin, both partners in the Robert Meyer Company and stockholders of Packard Platt Plaza, Incorporated, were found personally liable on the lease, along with Joshua Weiner, a stockholder in the assignee corporation.

## II

Plaintiffs contend that the partnership's failure to cancel the lease pursuant to the escrow agreement bound the defendants and placed the risk of the development scheme's failure on defendants' shoulders. The lease assignment to a corporation

without meaningful assets is viewed as an impermissible attempt to evade this liability. This contention rests on an incorrect reading of *Cinderella Theater Co v United Detroit Theaters Corp,* 367 Mich 424; 116 NW2d 825 (1962).

By limiting an investor's financial risk to the amount of his stock contribution, the corporate form serves important social policies by creating an incentive to pool resources and to channel them into productive activity.[5] By the same token, freeing shareholders from all personal liability runs the risk that the corporate form may be used as a shield for action the law would not condone if done by an individual and as a subterfuge for increasing one's personal autonomy at the expense of others.

In an effort to strike a balance between these opposing policies, this Court has held that fraud or other attempts to evade the law justify invoking equity's power "to look through and behind the legal entity of corporate existence". *Gledhill v Fisher & Co,* 272 Mich 353; 262 NW 371 (1931). This test is not to be applied in a mechanistic fashion. *Brown Bros Equipment Co v State Highway Comm,* 51 Mich App 448; 215 NW2d 591 (1974). The entire spectrum of relevant fact forms the background for such an inquiry, and the facts are to be assessed in light of the corporation's

---

[5] "The original purpose of laws permitting the formation of corporations was to enable stockholders to put at the risk of the business capital reasonably adequate for its needs, and thereby keep free from that risk their uninvested assets and their personal responsibility. That, as our corporation laws have long attested, has been deemed consonant with the public interest and a fair compromise between the desires of investors for the fullest immunity and the desire of creditors for the fullest means of satisfaction." *Hanson v Bradley,* 298 Mass 371, 380; 10 NE2d 259 (1937).

See, also, Posner, *The Economic Analysis of Law* (2d ed, 1977), ch 14, §§ 1-4.

economic justification to determine if the corporate form has been abused.

Plaintiffs did not plead or prove at trial fraud or other violation of law. No evidence was introduced at trial that defendants misrepresented the capitalization of the corporation or their intended purpose in organizing the corporation and assigning the lease to the corporation. A pre-existing obligation was not assigned to the corporation; rather, the assignment was made at a time when the partnership still had the option of rescinding all liability under the lease that was assigned to the corporation, and the partnership obtained the landlord's written consent to the assignment.

The plaintiffs and the defendant partnership undertook a problematic and speculative real estate venture. The developers staked their expertise and investment capital, but, as the escrow agreement shows, they would not assume a personal obligation unless the land was rezoned. The landowners wagered that the gain from their land in its developed state would more than exceed its present value, for the lease guaranteed them not only a base rent of $36,000, no doubt reflecting the land's post-development value, but a significant percentage of the rents from the shopping center's occupants. At the outset, the parties shared the risk that the effort to develop the property might prove futile.

Plaintiffs' presentation proceeds on the assumption that at a time when the prospects for developing the land were becoming increasingly less favorable, the developers decided to expose themselves to unlimited personal liability on a 50-year lease with aggregate rent exceeding 1.5 million

dollars no matter what the outcome of their ef-
forts. One would expect that as the probability of
failure increased experienced real estate develop-
ers would seek to contain their risks, not to em-
brace larger ones.

The function of the assignment of the lease was
to continue the parties' initial allocation of risk.
The plaintiffs would rescind the lease pursuant to
the reserved power to do so unless an assignment
limiting the developers' liability was consented to
by the landlord. The option to cancel the lease was
bypassed in favor of the contested lease assign-
ment. The plaintiffs were not victimized by an
abuse of the corporate form. The defendants
merely exercised their bargaining power. If the
plaintiffs did not consent to the assignment, then
the developers would exercise their option to can-
cel and all development efforts would cease. The
plaintiffs' desire to enhance the value of their land
would have been unsatisfied, left to brave the
arrival of yet another developer who might dictate
the same or even harsher terms.

Subsequent events support the conclusion that
the plaintiffs understood that there was no per-
sonal liability on the lease. The plaintiffs did not
make a formal request for rent or reimbursement
for taxes paid by the plaintiffs until the com-
mencement of this action three years after the
first rental payment came due. When it became
apparent that it would be impossible to rezone the
residential tract for commercial use, plaintiffs
agreed to modify the lease, severing the residential
parcel and reducing the rent due. If plaintiffs were
really looking toward the production of present
rents rather than rents from the land in its devel-
oped state, then there was no reason to consent to

the modification. By plaintiffs' own hypothesis, the liability was already in existence and capable of enforcement.

The assignment to the corporation was not a fraud or an attempt to evade the law, but only a means for perpetuating the original understanding of the parties. Now that both parties have lost their gamble, there is no warrant for using the device of piercing the corporate veil to radically change the terms of their bargain.

Instead, this Court's decision in *Cinderella Theater* is said to hold that a lease assignment to a corporation for the purpose of avoiding a pre-existing liability *without allegations of any wrongdoing* merits fastening personal liability on corporate shareholders. In *Cinderella Theater,* two corporations entered into a lease for a movie theater. The lease contained a provision permitting the lessee to assign the lease to a third party without the landlord's consent. When the lessee's theater began to sustain heavy financial losses, the lessee took advantage of the assignment clause and liquidated its investment through assignment to a corporation devoid of assets.

Upon the lessor's action for rent, this Court analyzed the situation not as a problem in corporation law, but as one of lease interpretation. It held that a proper construction of the assignment clause required the implication of a covenant restricting lease assignment to only solvent assignees. Any other interpretation violated the lessor's firmly grounded expectation that the lessee would absorb the risk of his own enterprise's failure. *Cinderella Theater* does not conclude that a lease assignment *may never* be used to avoid a pre-

existing debt; rather it concludes that where an assignment clause is self-executing and circumstances show that assignment to an insolvent corporation was not contemplated, a protective covenant will be inserted into the lease.

The instant case is the mirror image of *Cinderella Theater.* From the inception of the lease, plaintiffs were protected from the possibility of an evasive assignment to a sham corporation. Their written consent was necessary before such an assignment took legal effect. Though the lease provided that consent to an assignment could not be unreasonably withheld, such a refusal in the context of a proposed assignment to the most fragile of corporate shells would have been fully justified. Yet plaintiffs consented to an assignment to a corporate shell fully aware that the purpose of the assignment was to insulate the developers from personal liability before the obligation to pay rent under the lease became indefeasible.

This Court's holding in *Cinderella Theater* that a covenant to protect against a lessee attempting to shift the risk of his business's failure to the landlord was implied in the lease does not justify imposing liability on the individual defendants in the instant case who acted before they were personally liable with disclosure to the landlord of their purpose and with the consent of the landlord.[6]

---

[6] The principle that a plaintiff may not seek to disregard the corporate entity when he is fully aware of the character of the corporation with which he deals is recognized in *Finley v Union Joint Stock Land Bank of Detroit,* 281 Mich 214; 274 NW 768 (1937). There a trust company brought an action to recoup loans upon which defendant's subsidiary had defaulted. Although the parent owned all the stock of the subsidiary and the two companies shared the same officers and directors, this Court refused to permit the action. Among the reasons given for this decision was the following:

III

The plaintiffs also rely on the language of the lease providing that if the lease is assigned to a non-corporate entity or to more than one person, corporation, or entity, the assignees "and all members of such entities shall assume" the obligations of this lease.[7] That provision is not self-executing.

"A claimant of a subsidiary corporation cannot be said to have been affected by the parent's use of the subsidiary as a mere instrumentality, if with knowledge of all the facts at the time he entered into the transaction with the subsidiary, he accepted or approved the relationship between the two corporations." *Finley,* pp 221-222 (quoting Powell, *Parent and Subsidiary Corporations,* p 83).

Similarly, see *Brunswick Corp v Waxman,* 459 F Supp 1222, 1231-1232 (ED NY, 1978) ("Although under-capitalization of the bowling operation might under other circumstances indicate that the corporate form * * * should be pierced, * * * Brunswick had full knowledge of the lack of capitalization, and consented to it. Brunswick was not misled into doing business with a no-asset corporation and is hardly in a position now to complain that in the absence of any additional assets in that corporation the liability should be shifted to the Waxmans."); *Lynch v McDonald,* 155 Cal 704; 102 P 918 (1909); *Hanson v Bradley,* 298 Mass 371; 10 NE2d 259 (1937); *Atomic Fuel Extraction Co v Estate of Slick,* 386 SW2d 180 (Tex Civ App, 1965).

[7] The lease provided:

"Tenant shall have the right, with prior written consent of landlord first had and received, which consent shall not be unreasonably withheld, to assign this lease, which assignment shall be effective upon delivery to landlord an agreement executed by tenant and the proposed assignee, wherein and whereby such assignee assumes due performance of the obligations on tenant's part to be performed under this lease to the end of the term hereof. Upon the tenant having delivered to the landlord the agreement of the assignee to assume the obligations of this lease as aforesaid all liabilities and obligations on the part of tenant accruing after such assignment shall terminate, provided that upon the effective date of such assignment and thereafter all liabilities and obligations shall be binding only upon the assignee, but nothing herein contained shall be construed to release tenant from any liability or obligation which accrued prior to the effective date of such assignment. In the event this lease shall be assigned to a partnership, tenancy-in-common, joint tenancy, syndicate, joint venture or similar entity or to more than one person, corporation or other entity, all such persons, corporations and entities and all members of such entities shall assume the obligations of this lease jointly and severally. Nothing contained herein shall preclude the right of stockholder or owner of interest at the time of the signing of this lease to transfer all or part of his or their interest by gift or otherwise, to or for the benefit of his wife, children or heirs."

It does not provide that all assignees and all members of such entities shall "be deemed" to assume the obligations of the lease. The assignee corporation agreed in writing to assume the tenants' obligations under the lease but none of the individual defendants executed an assumption of the tenant's obligations under the lease, and, to repeat, the consent to assignment signed by the landlord expressly stated that the landlord would thereafter look to and recognize the assignee corporation "as the tenant under said lease". It is also clear in the context that the word "entity" refers to a non-corporate entity and that the shareholders of a corporation are not "members of such entities".[8]

---

[8] The lease provision has two clauses. The first designates the assignments to which the provision applies. They fall into two classes: (1) an assignment to a "partnership, tenancy-in-common, joint tenancy, syndicate, joint venture or similar entity" and (2) an assignment to "more than one person, corporation or other entity". The second subjects all such assignments to the condition that "all persons, corporations, and entities and all members of such entities shall assume the obligations of this lease jointly and severally". Thus, if an unprovided-for assignment occurs, then the assumption requirements of the second clause are irrelevant.

With respect to the first class of assignments, no explicit reference to a corporation is made. Only with difficulty can it be argued that a corporation is a "similar entity" to a partnership, tenancy-in-common, joint tenancy, syndicate, or joint venture.

Nor would an assignment to a corporation come within the language which creates the second class of assignments. First, this language posits an assignment to *more than one* assignee. Second, this language draws a contrast between "corporations" and "other entities". Such a disjunction would normally imply that the words were meant to stand in opposition, not that they were mutually inclusive of one another. Third, if the previous analysis is accepted, the reference in the first category of assignments to a "similar entity" excludes the concept of a corporation.

If an "entity" is not a "corporation", then the subsequent reference to "all members of an entity" in the second clause of this provision would not refer to a "corporation", and, thus, these words would not perform the function plaintiffs attribute to them.

Moreover, the lease provision requires that "members * * * shall assume" the lease obligations, not that they will be deemed to have assumed them. This language looks toward the future, requiring a voluntary lease assumption by the members of the assignee.

Moreover, it is again pertinent that in not rescinding the lease, in accepting the release from escrow of a copy of the lease, and in assigning the lease to a corporation with a nominal capitalization, the partners of the defendant partnership manifested their purpose and intent not to assume personal liability, and that the plaintiffs, in consenting to the assignment, expressed their agreement and consent to that purpose. Plaintiffs have not shown that the assignment could have served any purpose other than that claimed by the defendants. Any arguable doubt concerning the meaning of the language of the lease and of the assignment should in those circumstances be resolved in favor of the defendants.

It is also noteworthy that the rule for which the plaintiffs would have this Court write would produce an anomalous result. A court will refuse to pierce the corporate veil where corporate action is not fraudulent or otherwise illegal, but, if plaintiffs' rule is adopted, the corporation could impose liability on its stockholders. There is no warrant for conferring this power on the corporation.

All jurisdictions which have decided the issue agree that shareholders must expressly consent to the terms of a contract which would expose them to personal liability for corporate obligations.[9] Any other rule would unsettle the relationship between a corporation and its stockholders.[10]

---

[9] Absent authorization in its charter, the universal rule is that a corporation does not possess the authority to bind stockholders to personal liability for its debts without their consent. *Thomas v Matthiessen*, 232 US 221; 34 S Ct 312; 58 L Ed 577 (1914). See, generally, 13A Fletcher, *Cyclopedia of the Law of Private Corporations* (1961 ed), ch 58, § 6218, p 24.

[10] The present case is an example of the mischief such a rule could create. A shareholder, Joshua Weiner, who was not personally liable on the lease before it was assigned and whose relationship to this

Reversed.

FITZGERALD, C.J., and KAVANAGH, WILLIAMS, COLEMAN, and RYAN, JJ., concurred with LEVIN, J.

RILEY, J., took no part in the decision of this case.

transaction was at best incidental, now finds himself ensnared by the wording of this clause.

Moreover, only three out of the seven shareholders in Packard Platt Plaza, Incorporated, were joined as defendants in this action. The record shows that the unjoined shareholders had no ownership interest in the assigning partnership and no personal involvement whatsoever in the development efforts. Yet if plaintiffs' theory is accepted, then as shareholders they also became jointly and severally liable on the leasehold obligation. Conceivably, if this judgment is affirmed, defendants may seek to reduce their extensive liability and launch an action for contribution even though these shareholders had no expectation that this bare connection would expose them to such hazard.