941 F.2d 1210
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Richard MATTNER (89-2366), Plaintiff-Appellee,
v.
TOM A. JENNARO & ASSOCIATES, and Terrific Tomato Company,
Defendants-Appellants,
Broderick Bolton, Defendant,
Vernon Hauch.
Richard MATTNER (89-2368), Plaintiff-Appellee,
v.
Broderick BOLTON, Defendant-Appellant,
Tom A. Jennaro & Associates, and Terrific Tomato Company, Defendants,
Vernon Hauch.
 No. 89-2366.
 United States Court of Appeals, Sixth Circuit.
 Aug. 20, 1991.
 
 Before RYAN and ALAN E. NORRIS, Circuit Judges, and RUBIN, District Judge.*
 PER CURIAM.
 
 
 1
 Defendants Tom A. Jennaro & Associates, the Terrific Tomato Company, and Broderick Bolton appeal the jury verdict for plaintiff Richard Mattner in this diversity breach of contract action. For the reasons detailed below, we find that the district court erred in admitting the testimony of two witnesses as evidence of defendants' routine business practice under Fed.R.Evid. 406, and erred in submitting to the jury the issue whether the Company's corporate veil should be pierced.
 
 
 2
 Therefore, we shall reverse the district court's judgment entered on the jury verdict.
 
 I.
 
 3
 Mattner is a Michigan tomato farmer. In 1984, he entered into an agreement with Tom A. Jennaro & Associates, a tomato broker, to raise green tomatoes. Associates is a partnership consisting of Tom Jennaro and his wife, Virginia Jennaro. Jennaro is well known in the tomato brokerage business in the Coloma, Michigan area. Prior to this agreement with Mattner, Jennaro had never handled "green" tomatoes as a commodity. Jennaro hired Bolton from Florida because Bolton had experience with green tomatoes and could assist Jennaro in marketing his tomatoes.
 
 
 4
 The green tomato growing and harvest season falls in the middle of the calendar year. The 1984 season was successful and all area farmers who had green tomato marketing contracts with Associates were properly compensated. During the 1984 season, Associates and Bolton were joint venturers and the profits from the green tomato program were split equally between Associates and Bolton. In November 1984, between tomato seasons, Jennaro and Bolton formed the Terrific Tomato Company, a Florida corporation and, in 1985, conducted all of their green tomato business through the corporation.
 
 
 5
 Mattner filed this breach of contract suit in September 1987, claiming that he did not receive the proper amount due him for his green tomatoes from the 1985 season. He also claimed that the corporation's limited liability should be disregarded and the corporate veil pierced because the Company was nothing more than the alter ego of Associates and Bolton. The jury agreed, returning a verdict against the partnership and Bolton.
 
 
 6
 Defendants appeal, claiming that the district court erred in: 1) admitting the testimony of two farmers as evidence of defendants' routine business practice under Fed.R.Evid. 406; 2) denying defendants' motion for a directed verdict because there was insufficient evidence to permit the jury to pierce the Company's corporate veil; 3) denying defendants' motion for a directed verdict because there was a consignment contract; 4) permitting the jury to use a verdict form that required them to find Associates and Bolton jointly liable; and 5) denying Virginia Jennaro's and Associates' motion for a directed verdict because they were not shareholders of the Company and could not be held liable for the Company's debts.
 
 II.
 A.
 Federal Rule of Evidence 406
 
 7
 Defendants claim the district court erred in admitting evidence of two 1985 contractual arrangements between defendants and S & S Farms, Inc. and Vernon Hauch, two other farming operations in the green tomato program. Defendants argue that these contractual arrangements do not evidence a routine business practice under Fed.R.Evid. 406 and, if they did, the probative value of this testimony was substantially outweighed by the danger of unfair prejudice to defendants under Fed.R.Evid. 403.
 
 Rule 406 provides:
 
 8
 Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice.
 
 
 9
 Rule 406 permits evidence of the usual and fixed course of dealings between two parties. The routine "practice" must be any specific conduct or event that is so automatic, so repetitive, that it might approach evidence of habit; it must be done unwittingly. See 2 J. Weinstein & M. Berger, Weinstein's Evidence, p 406 at 406-21.
 
 
 10
 Mattner offered the testimony of Steve Frank, the owner of S & S Farms, Inc., and the testimony of Hauch, to show that each of them thought: 1) that the sale of his tomatoes were outright sales of quoted prices, not consignment; 2) that he was dealing with Associates and Bolton, not with the Company; and 3) that the name "Terrific Tomato Company" was used for brand identification only. The trial court ruled that Frank's and Hauch's testimony as to what they believed their contractual arrangements were with Jennaro and Bolton was relevant and admissible under Fed.R.Evid. 406 because both testified that Bolton handled all three tomato farmers identically. However, we find that the other farmers' understanding as to the nature of their contracts with defendants is irrelevant to determining the terms of Mattner's contract. The farmers' testimony is not evidence of a routine business practice within the meaning of Fed.R.Evid. 406 in that it does not approach evidence in the nature of a business organization's habitual practice which is the rationale for admitting Fed.R.Evid. 406 evidence. Therefore, we find that the district court erred in admitting the farmers' testimony under Fed.R.Evid. 406.
 
 B.
 Piercing the Corporate Veil
 
 11
 Defendants claim the district court erred in denying their motion for a directed verdict on the issue of piercing the corporate veil. They contend that there is insufficient evidence demonstrating an abuse of the corporate form, and in particular, that the Company was the alter ego of Associates and Bolton.
 
 This court has previously stated:
 
 12
 "[T]he general principle in Michigan is that separate corporate identities will be respected, and thus corporate veils will be pierced only to prevent fraud or injustice." ... "[F]raud or other attempts to evade the law justify invoking equity's power to look through and behind the legal entity of corporate existence." ... "The entire spectrum of relevant fact forms the background for such an inquiry, and the facts are to be assessed in light of the corporation's economic justification to determine if the corporate forum has been abused." ... Each case must be decided on its own facts.
 
 
 13
 Bodenhamer Bldg. Corp. v. Architectural Research Corp., 873 F.2d 109, 111 (6th Cir.1989) (citations omitted).
 
 
 14
 Moreover, under Michigan law, before the corporate form will be disregarded, the corporation must be used for more than merely avoiding liability. There must be evidence of misconduct. See Klager v. Robert Meyer Co., 415 Mich. 402, 415 (1982). Although the corporate veil may be pierced in the absence of fraud, Herman v. Mobile Homes Corp., 317 Mich. 233, 26 N.W.2d 757 (1947), there must be evidence that the use of the corporation was "improper." See Gottlieb v. Arrow Door Co., 364 Mich. 458, 110 N.W.2d 767, 768 (1961). One improper use of the corporate form occurs when the corporate entity "has been used as a subterfuge and to observe it would work an injustice." W. Fletcher, Fletcher Cyc. Corp., § 41.10 at 614 (Perm.Ed.1990). This "improper use" has been commonly referred to as the "alter ego doctrine."
 
 
 15
 To establish the alter ego doctrine it must be shown that the stockholders' disregard of the corporate entity made it a mere instrumentality for the transaction of their own affairs; that there is such unity of interest and ownership that the separate personalities of the corporation and the owners no longer exist; and to adhere to the doctrine of corporate entity would promote injustice or protect fraud.
 
 
 16
 Id. at 615.
 
 
 17
 Mattner claims that the Terrific Tomato Company was formed solely to establish a trade name, and is the alter ego of Associates and Bolton. Mattner asserts that, in reality, defendants were merely continuing their joint venture during the 1985 season as created in 1984. The difficulty with Mattner's claim, however, is that although defendants failed to tell Mattner of the Company's incorporation, there is no evidence that the corporation has been used as a subterfuge. There is no evidence that the separate personalities of the Company and its shareholders, Bolton and Jennaro, no longer exist. Similarly, there is no evidence that the Company was "a mere instrumentality" for the transaction of Bolton's and Jennaro's own affairs. The evidence suggests that the corporation was formed to limit the liability of its shareholders; to evenly distribute the responsibility for the business between Jennaro and Bolton; and, to consolidate all of the green tomato operations under one business and one brand name.
 
 
 18
 Furthermore, the evidence suggests that the Company complied with requisite formalities of a corporation. It kept separate books. It issued stock. It paid corporate taxes. It received various licenses. It used signs and invoices with the Company logo. It displayed the Company logo on all tomato boxes. It advertised as the Company. It had its own checking account, and it had its own separate phone which was answered using the Company name. In addition, there is evidence that the Company was adequately capitalized: Its shareholders each invested $500 on the day of incorporation; an additional $30,000-$40,000 in profits from 1984 was invested; Jennaro loaned the Company $25,000; and the Company had $100,000 in its checking account throughout the 1985 tomato season.
 
 
 19
 The mere failure of the Company, once a successful business, is not a warrant to pierce the corporate veil. Because there is no proof that the Company was incorporated for an improper use or was merely an instrumentality for Bolton's and Jennaro's personal affairs, we hold that the district court erred in submitting to the jury the issue whether the Company's corporate veil should be pierced.
 
 
 20
 Given the foregoing, we need not address defendants' remaining claims.
 
 III.
 
 21
 The judgment of the district court is REVERSED.
 
 
 
 *
 The Honorable Carl B. Rubin, United States District Judge for the Southern District of Ohio, sitting by designation