*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

WINDSOR MORTGAGE HOLDINGS LIMITED,
LLC,

        Plaintiff-Appellant,

v

CINDY SMITH,

        Defendant-Appellee,

and

CRAIG BANWELL, LIST TRUE, INC., and BRIAN
KNIGHT,

        Defendants.

UNPUBLISHED
February 10, 2022

No. 356089
Ingham Circuit Court
LC No. 19-000712-CK

Before: GLEICHER, C.J., and SERVITTO and LETICA, JJ.

PER CURIAM.

Plaintiff, Windsor Mortgage Holdings Limited, LLC, appeals as of right the trial court's order granting summary disposition in favor of defendant Cindy Smith (defendant).[1] We affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

This case arises from the breach of an agreement to perform renovations on a house in Ingham County, Michigan. In 2012, List True, Inc. (List True) was incorporated by Brian Knight (Knight) and Michael R. Fannon. The articles of incorporation did not identify the nature or

---

[1] Plaintiff obtained a default judgment against defendants List True, Inc., and Brian Knight. After the trial court denied defendant Craig Banwell's motion for summary disposition, he entered into a settlement agreement with plaintiff. These defendants are not parties to this appeal.

purpose of the business, but it was alleged that it engaged in real estate listing and marketing services. In 2018, an amended annual report for List True identified Knight as the president and resident agent and Craig Banwell (Banwell)[2] as the secretary. This amended report identified the "general nature and kind of the business that the corporation engaged" as "Real Estate." It was claimed that, in 2018, List True was in dire financial straits, and therefore, Knight and Banwell decided to expand their business to provide "home flipping" services. Consequently, defendant was invited to join a "new entity" with Knight and Banwell. Defendant was to receive partial ownership in "List True, Inc.," provide construction consulting services, and loan $30,000 to this new company. An operating agreement (agreement) was prepared for "List True, Inc." and signed by defendant, Knight, and Banwell in February 2018. However, the agreement contained contradictions and inaccuracies. For example, the agreement indicated that it was entered into and filed in accordance with Michigan law, but it further cited to Indiana law. It also stated that the articles of incorporation were filed with the Michigan Secretary of State on February 28, 2018, but the filing never occurred.

In the summer of 2018, Knight, on behalf of List True, entered into a construction contract with plaintiff to perform renovation work. This contract provided that the work would commence on July 9, 2018, and be completed by September 15, 2018. Defendant did not negotiate and was not identified as a party to the contract. Rather, defendant "simply oversaw the renovations, purchased supplies and materials, scheduled and paid laborers, and ensured that the renovation of the [h]ome was progressing properly." Defendant admitted that she did discuss a change order with plaintiff's representative, real-estate agent Shawn Stovall, but averred that the change order was ultimately approved by Knight.

The cost of the construction project was $65,000, and plaintiff preferred to make four payments of $16,250. However, advances on the installment payments were requested. Ultimately, List True demanded payment to continue services, and when plaintiff refused, work on the project ceased prior to completion. Plaintiff's agent, Allen Stovall (Allen), filed a police report after visiting the project to find that multiple items were missing from the home, including kitchen cabinets, electrical plugs and fixtures, and bathroom vanities, sinks, and hardware, among other items. Defendant gave an interview to the police about the missing items. She stated that additional funds were requested to complete the project and she advanced $20,000 of her own money to attempt to finish it. When Allen refused to pay additional funds, defendant contacted an attorney who purportedly advised that she was entitled to return to the property and remove any items "belonging to her that were not nailed to the walls." Defendant admitted that she removed her tools and the bottom kitchen cabinets and would only advise that the items were stored at a family member's home. She averred that she did not use any monies from plaintiff or its agents for her own personal use. Rather, she loaned List True $34,394.03 for labor and supplies associated with the home, but was never repaid.

Acknowledging that it did not execute a contract with defendant, plaintiff pursued recovery against her premised on a claim of piercing the corporate veil. Defendant moved for summary

---

[2] In his motion for summary disposition, Banwell denied having a corporate role or agreeing to be the secretary.

disposition under MCR 2.116(C)(8) and (10), alleging that: (1) she was not a member of a corporate entity because it was never formed; (2) defendant was "duped" into loaning funds to this unformed entity; (3) she was not paid wages or compensation by List True; (4) she did not use plaintiff's monies for personal use; and (5) List True was dissolved without her knowledge. She asserted that summary disposition was proper in her favor because plaintiff could not meet the requirements to pierce the corporate veil.

Plaintiff responded that there were factual issues concerning defendant's representations and actions to plaintiff's agents that precluded summary disposition. Irrespective of the failure to formally file the agreement with the state, defendant nonetheless believed that she was a member of the corporation with Knight and Banwell and conducted herself accordingly. Plaintiff provided documentary evidence, including affidavits from the Stovalls, that defendant mentioned that she acted on behalf of her partners, she was in charge of the renovations, she signed a change order as chief operations officer, and she removed the fixtures and other items from the home.

The trial court initially held oral argument on defendant's dispositive motion, but took the matter under advisement. Shortly thereafter, the trial court heard additional argument when addressing Banwell's motion for summary disposition. When questioning counsel for the parties, the court inquired regarding the status of discovery. The trial court attributed the lack of discovery and the failure to depose the parties or their agents to the desire to limit expenses. Plaintiff's counsel confirmed that "there was an effort to keep costs down" and the pandemic made conducting depositions "more challenging." The trial court ultimately granted defendant's motion, stating, in pertinent part:

> All of the documentation presented indicates that her role for this particular property was as a contractor to do the rehabilitation work for the property.
>
> That's even conceded in the affidavit of [Allen] Stovall who indicates that, unlike his communications with [Banwell] who represented that he was one of the owners of List True and the chief financial officer, the frequent communication [Allen] had with [defendant] with regard to the property was that she was in charge of rehabilitation and the text messaging, although not entirely clear, but even based on the assumptions in a light most favorable to the Plaintiff as [counsel] has argued, is that all of this discussion about [defendant's] role and her role in terms of the finances was that she fronted money and wanted it back.
>
> That's also actually consistent with one of the things that Plaintiff points to which is that there was cabinetry installed by [defendant] or her laborers and that when there was a default on the payment that she took those back.
>
> []Plaintiff argues that there's no evidence that she put those back into the corporate entity, but rather she took them for herself. That actually would be consistent with her having a role that was not corporate - - a corporate role with List [True].
>
> I'm going to grant the Motion for Summary Disposition as to [defendant] because there is not even a prima facie showing that she was part of the List [True]

corporate entity that's named in the Complaint and the only corporation that is registered with the State of Michigan.

Plaintiff only appeals the ruling granting summary disposition to defendant.

## II. DISCUSSION

Plaintiff asserts the trial court improperly decided factual issues because the jury must resolve defendant's interest in the corporate entity and whether her representations to plaintiff warrant piercing the corporate veil. We disagree.

A trial court's ruling on a motion for summary disposition is reviewed de novo. *Bennett v Russell*, 322 Mich App 638, 642; 913 NW2d 364 (2018). Summary disposition is appropriate pursuant to MCR 2.116(C)(10) where there is "no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). When reviewing a motion for summary disposition challenged under MCR 2.116(C)(10), the court considers the affidavits, pleadings, depositions, admissions, and other admissible documentary evidence then filed in the action or submitted by the parties. MCR 2.116(G)(4), (G)(5); *Puetz v Spectrum Health Hosps*, 324 Mich App 51, 68; 919 NW2d 439 (2018). "A genuine issue of material fact exists if the record, viewed in a light most favorable to the nonmoving party, establishes a matter in which reasonable minds could differ." *Id*. However, the trial court may not make factual findings or credibility determinations in addressing the dispositive motion. *Id*. at 68-69.

"In order for a court to order a corporate veil to be pierced, the corporate entity (1) must be a mere instrumentality of another individual or entity, (2) must have been used to commit a wrong or fraud, and (3) there must have been an unjust injury or loss to the plaintiff." *Florence Cement Co v Vettraino*, 292 Mich App 461, 469; 807 NW2d 917 (2011). When the corporate veil is pierced, liability can be imposed upon individual shareholders or corporate officers. *Gallaher v Persha*, 315 Mich App 647, 664; 891 NW2d 505 (2016). That is, liability is imposed because there is sufficient evidence for the trier of fact to conclude "that the individual so misused the corporation that it was unable to pay on the outstanding judgment and an injustice would occur if the corporate form was not ignored." *Id.* (citation omitted). Whether to pierce the corporate veil is contingent upon "[t]he entire spectrum of relevant fact[s] that form[] the background for such an inquiry, and the facts are to be assessed in light of the corporation's economic justification to determine if the corporate form has been abused." *Klager v Robert Meyer Co*, 415 Mich 402, 411-412; 329 NW2d 721 (1982).

In this case, there was no evidence that defendant was ever an officer, director, or shareholder of List True, the entity previously created by Knight that entered into the contract with plaintiff. In support of its argument that defendant was List True's "owner," plaintiff primarily emphasizes the agreement that was supposed to be formed in February 2018 and to which defendant signed as a member. However, it is undisputed that these articles of organization were never filed for this limited liability company (LLC) with defendant, Banwell, and Knight as members. An LLC is formed only when executed articles of organization are filed. See MCL 450.4104; MCL 450.4202. Therefore, such an LLC never existed. Accordingly, the "List True" with whom plaintiff contracted was the corporation formed in 2012 by Knight, and of which

-4-

defendant was never an officer, shareholder, or director. Therefore, the court correctly held that the corporate veil could not be pierced with respect to defendant.

Plaintiff contends that the trial court inappropriately rendered factual findings in reaching this determination. It alleges that, irrespective of the failure to formally file the articles of incorporation for a new entity, defendant nonetheless believed that she was a member of the newly formed "List True" and represented herself accordingly. Plaintiff cites to defendant's statements to the Stovalls regarding her "partners," her text message exchanges with Banwell, and her inappropriate removal of fixtures and other items from the project. Nonetheless, viewing this evidence in the light most favorable to plaintiff, a genuine issue of material fact upon which reasonable minds could differ was not established. *Puetz*, 324 Mich App at 68-69. It is apparent that defendant did not work alone on the project and that she communicated with the Stovalls in her capacity as a contractor on the project. Any reference to partner did not necessarily reflect a reference to a corporate structure. Further the documentary evidence submitted by plaintiff reflected that defendant tracked the costs expended on supplies and labor. Although plaintiff alleged that this demonstrated that defendant comingled her own personal funds with the corporation, it never presented bank records in support. Rather, defendant averred that she loaned money to the corporation to maintain the project, not to abuse the corporate form, and she was never repaid. *Klager*, 415 Mich at 411-412.

Plaintiff's reliance on the text messages did not preclude the grant of the defense motion. The messages reflect that the relationship between Banwell and defendant became strained. And the text messages exchanged demonstrated that multiple projects were being conducted. Although plaintiff contends that a reference to splitting a deposit three ways was in close proximity to a payment made by plaintiff, it failed to present records to support the assertion. Moreover, although List True did not complete the project, plaintiff did not dispute that work was performed for which List True was entitled to compensation. Thus, plaintiff failed to present documentary evidence to contest that List True was not entitled to the payments in light of the goods and services that had been completed at that time. As the trial court noted, plaintiff's proofs in opposition to the dispositive motion were constrained by the limited discovery in which it engaged. Accordingly, the trial court did not improperly render factual findings regarding a genuine issue of material fact in granting summary disposition to defendant.

Affirmed. Defendant, the prevailing party, may tax costs.


/s/ Elizabeth L. Gleicher
/s/ Deborah A. Servitto
/s/ Anica Letica

-5-