## PULTE HOME CORPORATION, INC., Plaintiff,

v.

## PLY GEM INDUSTRIES, INC., Hoover Treated Wood Products, Inc., Johnson Controls, Inc., Georgia Pacific Corporation, Lowe's Companies, Inc., and its subsidiaries, including Lowe's of Florida, Inc., Lowe's of Georgia, Inc. and Lowe's Investment Corporation, Defendants.

No. 89–205–CIV–T–17A.

United States District Court, M.D. Florida, Tampa Division.

Sept. 22, 1992.

1472

1474

John Eamon Johnson, Keith Eugene Rounsaville, Trenam, Simmons, Kemker, Scharf, Barkin, Frye & O'Neill, P.A., Tampa, Fla., Richard Kenneth Wray, Keck, Mahin & Cate, Chicago, Ill., for Johnson Controls Inc.

Raymond A. Haas, Boehm, Brown, Rigdon, Seacrest & Fischer, P.A., Tampa, Fla., for Lowe's Companies, Inc.

Barbara Wrubel, Skadden, Arps, Slate, Meagher & Flom, New York City, Debra M. Kubicsek, Langford, Hill, Mitchell, Trybus & Whalen, P.A., Tampa, Fla., for Georgia Pacific Corp.

John D. Shofi, Shofi, Smith, Hennen, Jenkins, Stanley & Gramovot, P.A., Tampa, Fla., Stephen W. Beik, Raymond Edwin Watts, Jr., Hannah, Marsee, Beik & Voght, P.A., Orlando, Fla., Gita F. Rothschild, Michael A. Tanenbaum, McCarter & English, Newark, N.J., for Hoover Treated Wood Products.

Michael Kent Houtz, Harris, Barrett, Mann & Dew, Tampa, Fla., Read K. McCaffrey, Patton, Boggs & Blow, Baltimore, Md., T. Gregory Slother, T. Gregory Slother, P.C., Griffin, Ga., for Osmose Wood Preservi.

Steven E. Siff, McDermott, Will & Emery, Miami, Fla., for Kaiser Agr.

Thomas John Roehn, Annis, Mitchell, Cockey, Edwards & Roehn, P.A., Tampa, Fla., Robert Dale Klein, Debra S. Block, Wharton, Levin, Ehrmantraut & Klein, Annapolis, Md., for Kaiser Aluminum and Chemical Corp.

Thomas John Roehn, Annis, Mitchell, Cockey, Edwards & Roehn, P.A., Tampa, Fla., for Kaiser Aluminum Properties, Inc.

Steven E. Siff, Martha V. Sackley, McDermott, Will & Emery, Chicago, Ill., for Kaiser-Estech, Maxxam, Inc., Kaiser Agr. Chemicals, Inc., Vigoro Industries and S & P Investments Corp.

Raymond A. Haas, Boehm, Brown, Rigdon, Seacrest & Fischer, P.A., Tampa, Fla., for Lowe's Companies, Inc.

M. Elizabeth Wall, Robert W. Boos, Stephen Wasinger, E. Powell Miller, E. Norma McKenna, Honigman, Miller, Schwartz & Cohn, Tampa, Fla., for Pulte Home Corporation.

Clifford L. Somers, Somers & Associates, James Robinson Lyle, Jr., Lyle & Skipper, P.A., Tampa, Fla., Jonathan I. Blackman, Cleary, Gottlieb, Steen & Hamilton, New York City for Ply Gem Industries.

ORDER

KOVACHEVICH, District Judge.

This cause is before the Court on all pending motions, including the following:

| | |
|---|---|
| DKT. 756 | Renewed Motion for Summary Judgment [Lowe] |
| DKT. 757 | Memorandum in support of Summary Judgment [Lowe] |
| DKT. 758 | Appendix to Renewed Motion for Summary Judgment [Lowe] |
| DKT. 768 | Motion for Partial Summary Judgment [Hoover Treated Wood] |
| DKT. 769 | Memorandum in support of Partial Summary Judgment [Hoover Treated Wood] |
| DKT. 770 | Appendix |
| DKT. 771 | Motion for Summary Judgment [Georgia Pacific] |
| DKT. 772 | Motion for Partial Summary Judgment and Supporting Memorandum [Georgia Pacific] |
| DKT. 773 | Motion for Summary Judgment [Georgia Pacific] |
| DKT. 774 | Motion for Summary Judgment [Georgia Pacific] |
| DKT. 775 | Appendix |
| DKT. 776 | Notice of Filing Motion for Summary Judgment [Johnson Controls] |
| DKT. 777 | Motion for Summary Judgment [Johnson Controls] |
| DKT. 778 | Memorandum in Support of Summary Judgment [Johnson Controls] |
| DKT. 781 | Motion |
| DKT. 782 | Memorandum in support of Alternative Summary Judgment [Johnson Controls] |
| DKT. 783 | Notice of Filing Motion and Alternative Motion for Summary Judgment [Johnson Controls] |
| DKT. 784 | Appendix |
| DKT. 785 | Appendix |
| DKT. 786 | Motion |
| DKT. 787 | Memorandum in Support of Summary Judgment [Pulte] |
| DKT. 788 | Motion |
| DKT. 789 | Memorandum in support of Renewed Motion for Summary Judgment [Pulte] |
| DKT. 790 | Renewed Motion for Summary Judgment [Pulte] |
| DKT. 791 | Memorandum in support of Motion for Summary Judgment [Pulte] |
| DKT. 792 | Motion for Summary Judgment [Pulte] |
| DKT. 793 | Memorandum in Support of Motion for Summary Judgment [Pulte] |
| DKT. 794 | Motion |
| DKT. 796 | Motion |
| DKT. 797 | Motion for Summary Judgment and Supporting Memorandum [Lowe] |
| DKT. 798 | Motion for Summary Judgment and Supporting Memorandum [Lowe] |
| DKT. 799 | Motion for Partial Summary Judgment and Supporting Memorandum [Lowe] |
| DKT. 800 | Affidavit to support Motion for Partial Summary Judgment |
| DKT. 801 | Notice of filing exhibits to Motion for Summary Judgment [Pulte] |
| DKT. 802 | Notice of Appendix |
| DKT. 803 | Appendix |
| DKT. 804 | Notice of Appendix |
| DKT. 805 | Appendix |
| DKT. 812 | Notice of filing cases cited |
| DKT. 813 | Response to Motion for Summary Judgment [Pulte] |
| DKT. 817 | Memorandum opposing Summary Judgment [Pulte] |
| DKT. 827 | Motion to file Summary Judgment [Johnson Controls] |
| DKT. 828 | Exhibits |
| DKT. 832 | Response to Motion for Summary Judgment [Pulte] |
| DKT. 833 | Memorandum in Opposition to Summary Judgment [Ply Gem] |
| DKT. 834 | Notice of Index |
| DKT. 856 | Motion for Leave to File Supplemental Motion for Summary Judgment [Johnson Controls] |
| DKT. 857 | Memorandum in support of Motion to Leave to File Supplemental Motion for Summary Judgment [Johnson Controls] |

DKT. 866 Supplement to Motion for Summary Judgment [Johnson Controls]
DKT. 880 Memorandum opposing Motion for Summary Judgment [Pulte]
DKT. 884 Memorandum opposing Renewed Motion for Summary Judgment [Hoover Treated Wood]
DKT. 888 Memorandum opposing Motion for Partial Summary Judgment [Pulte]
DKT. 879 Settlement Agreement between Pulte and Lowe's
DKT. 919 Motion to Strike [Johnson Controls]
DKT. 962 Memorandum opposing Motion to Strike [Pulte]
DKT. 1016 Corrected Response [Pulte]
DKT. 1017 Memorandum in response to Motion for Summary Judgment [Pulte]

## FACTUAL BACKGROUND

1. Plaintiff Pulte Home Corporation, Inc. ("PULTE") is a builder of multi-family residential housing units. Pulte is a Michigan corporation with its principal place of business in Michigan.

2. Defendant Hoover Treated Wood Products, Inc., a subsidiary of Ply Gem, is the manufacturer of a chemical used to treat plywood in order to make it fire retardant. ("FRT plywood"). Defendant Hoover is a Delaware corporation.

3. Defendant Ply Gem is a New York corporation. It has one operating division and ten principal operating subsidiaries. On September 23, 1983, Ply Gem established Hoover as a wholly-owned subsidiary and entered into an Assets Purchase Agreement to purchase all the assets of the Wood Preserving Division of Hoover Universal.

4. On March 2, 1985, Hoover Universal entered into a formal agreement under which HVU Acquisition Corp., a wholly-owned subsidiary of Johnson Controls, acquired the stock of Hoover Universal.

5. On May 12, 1985, the original Hoover Universal was merged into HVU Acquisition Corp., which then changed its name to Hoover Universal, Inc. By merger, the new Hoover Universal assumed or succeeded to the liabilities of its predecessor, the original Hoover Universal. Since May 12, 1985, Hoover Universal has been a wholly-owned subsidiary of Johnson Controls, Inc. Hoover Universal has never distributed or manufactured FRT plywood while its stock has been owned by Johnson Controls.

6. Hoover Universal sold its FRT business to Hoover Treated Wood Products pursuant to an Assets Purchase Agreement dated September 28, 1983. Hoover Universal sold substantially all assets of its Wood Preserving Division but retained liability for all claims regarding products shipped before October 1, 1983. Liability for products shipped after September 30, 1983 is the responsibility of Hoover Treated Wood Products.

7. Pulte concedes that Johnson Controls, Inc. is not directly liable to Pulte. Johnson Controls, Inc. is a Wisconsin corporation.

8. Defendant Georgia Pacific was a vendor of FRT plywood. Georgia Pacific is a Georgia corporation.

9. Pulte has installed the FRT plywood for the use of roof sheathing in the roofs of over 1,000 residential homes. In its amended complaint, Pulte avers that the product, FRT plywood, is defective due to the fact it has deteriorated or will prematurely begin to deteriorate, resulting in a compromise of the structural integrity of Pulte constructed homes.

10. Pulte, having discovered the nature of the degradation of the roof sheathing, commenced an ongoing remedial effort to repair and replace the deteriorating roof sheathing.

11. Plaintiff has filed a multi-count Amended Complaint (Dkt. 15) alleging: 1) Breach of Express and Implied Warranties; 2) Breach of Warranties of Future Performance; 3) Breach of Express Warranties and Misrepresentation; 4) Negligence; 5) Strict Liability; and 6) Fraud.

## STANDARD FOR SUMMARY JUDGMENT

This circuit clearly holds that summary judgment should only be entered when the moving party has sustained its burden of showing the absence of a genuine issue as to any material fact when all the evidence is viewed in the light most favorable to the nonmoving party. *Sweat v. The Miller Brewing Co.,* 708 F.2d 655 (11th Cir.1983). All doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *Hayden v. First National Bank of Mt. Pleasant,* 595 F.2d 994, 996–97 (5th Cir. 1979), quoting *Gross v. Southern Railroad Co.,* 414 F.2d 292 (5th Cir.1969). Factual disputes preclude summary judgment.

The Supreme Court of the United States held, in *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), "In our view the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552, 91 L.Ed.2d at 273.

The Court further stated, "Rule 56(e) therefore requires that nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, 'designate' specific facts showing there is a genuine issue for trial." *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. at 2553, 91 L.Ed.2d at 274. The Court is satisfied that factual disputes remain which preclude the entry of summary judgment.

## REMARKS

Many motions for summary judgment have been filed in this case. Initially, the Court notes that over one thousand documents have been filed to date during discovery, there are no stipulated facts, and many, many disputed discovery findings. The Court can therefore offer only limited guidance on some questions of law. The Court will briefly address the issues of law brought forth in the Memorandums supporting and responding to the many Motions for Summary Judgment.

Additionally, the Court takes notice of the Settlement Agreement between Plaintiff, Pulte, and the Defendant, Lowe's and its subsidiaries (DKT. # 879). As a consequence, the outstanding motions between Pulte and Lowe's are now moot.

## I. CHOICE OF LAW

1. What State's Substantive Law is to be Applied to the Issues Raised by Plaintiff and Defendants in Their Pleadings?

Jurisdiction in this case is founded upon diversity of citizenship. 28 U.S.C. section 1332. This Court, while sitting in diversity, is bound to apply the law of the state in which it sits. *See, Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

The *Erie* doctrine applies when a court must make a determination as to which state's substantive laws are to govern a dispute. A court, sitting in diversity, is required to apply the choice of law rules of the state in which it sits. See, *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

The first step in resolving a conflict of law issue is to determine how a state's highest court would decide which state's substantive law applies to a particular issue. In fact, we are "bound to decide the case the way it appears the state's highest court would." *Shapiro v. Associated Int'l Ins. Co.,* 899 F.2d 1116, 1118 (11th Cir. 1990), quoting *Towne Realty, Inc. v. Safeco Ins. Co. of America,* 854 F.2d 1264, 1269 n. 5 (11th Cir.1988).

There are many diverse substantive issues in this case. Per Defendants' briefs either supporting a Motion for Summary Judgment or opposing a motion for Summary Judgment, the parties have recognized that the majority of substantive issues elicit similar results in any possible jurisdiction. In such an instance, the choice of law issue is moot when "the laws of different jurisdictions lead to identical

results." *See, Shapiro*, at 1118 n. 2, *citing Bonar v. Dean Witter Reynolds, Inc.*, 835 F.2d 1378, 1388 n. 17 (11th Cir.1988); *Barrett v. Prudential Property and Casualty, Inc.*, 790 F.2d 842, 844 (11th Cir.1986).

Recognizing that "different substantive issues in a single case may have to be resolved under the laws of different states where the choices influencing decisions differ," *Shapiro v. Associated Int'l Ins. Co.*, 899 F.2d 1116, 1119 (11th Cir.1990), *citing Foster v. United States*, 768 F.2d 1278, 1281 (11th Cir.1985), this Court in its Order dated October 29, 1990 (Docket # 311) directed any party who felt there was a conflict of law issue, to discuss such conflict when the merits of a particular substantive issue are addressed. In this Order, then, the Court will continue this approach and discuss any conflict of law only when raised by a party in relation to a particular substantive issue.

Therefore, if not discussed, the parties may assume that *Shapiro* rules and Florida law then applies.

## II. PUNITIVE DAMAGES

1. Whether Pulte can Allege any Cause of Action to Support a Claim for Punitive Damages Against any Defendant.

■ Plaintiff has filed a multi-count Amended Complaint alleging Breach of Express and Implied Warranties, Common Law Misrepresentation, Negligence, Strict Liability and Willful Fraud. Plaintiff Pulte Home Corporation (Pulte) seeks compensatory and punitive damages from Defendants Ply Gem Industries, Inc., Hoover Treated Wood Products, Johnson Controls, Inc. and Lowe's Companies, Inc. The Complaint further alleges that Defendants sold Plaintiff a large quantity of FRT plywood, which was defective when used as roof sheathing. Defendants collectively argue that Pulte's allegations fall far short of alleging damages separate and distinct from Plaintiff's rights pursuant to contract. Defendants allege Plaintiff's cause of action is in contract, and not in tort, precluding an award of punitive damages. This Court applies the Eleventh Circuit standard as stated in *Sweat v. The Miller Brewing Co.*, 708 F.2d 655 (11th Cir.1983). Whether any of the Defendant's actions amounted to willful fraud or misrepresentation, justifying a claim for punitive damages is a factual determination which cannot be resolved at this time.

Jurisdiction in this action is founded upon diversity of citizenship, 28 U.S.C. section 1332. This Court, while sitting in diversity, is bound to apply state substantive law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Guaranty Trust Co. v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945); *Byrd v. Blue Ridge Rural Electric Cooperative, Inc.*, 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958); *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). The question of whether Pulte is entitled to punitive damages is therefore a question to be decided under Florida law. Additionally, the Court notes that judicial review under any of the possible relevant jurisdictions (Florida, Texas, Illinois, Georgia, and Virginia) will have the same probable outcome on the issue of availability of punitive damages. *See, Shapiro v. Associated Int'l Ins. Co.*, 899 F.2d 1116, 1118 (11th Cir. 1990).

■ It is well established under Florida law, and the general rule elsewhere, that punitive damages may not be awarded in cases based upon pure breach of contract. *Southern Bell Telephone & Telegraph Co. v. Hanft*, 436 So.2d 40, 42 (Fla. 1983). In order to support recovery for punitive damages in a contract case, the plaintiff must establish a separate, independent tort or culpable negligence which amounts to an independent tort. *Southern Bell*, at 42. *See* also, *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617 (Tex.1986); *Schaefer v. Miller*, 322 Md. 297, 587 A.2d 491 (1989); *Sorkin v. Blackman, Kallick & Co., Ltd.*, 184 Ill.App.3d 873, 133 Ill.Dec. 133, 540 N.E.2d 999 (1 Dist.1989).

Additionally, an independent tort may be derived from the same conduct and circumstances from which the breach of contract arose, "as long as the elements necessary

to prove that independent tort are alleged and proven, and as long as one is utilizing breach of contract and punitive damages principles." *Serina v. Albertson's,* 744 F.Supp. 1113, 1116 (M.D.Fla.1990).

Once the elements of an independent tort are established, analyzing the question of whether punitive damages are proper is decided under traditional tort law applications. *Serina,* at 1116.

The Florida Supreme Court has articulated the exacting standard required to support a claim for punitive damages. The Plaintiff must allege and prove conduct by the Defendant:

> ... of a gross and flagrant character, evincing reckless disregard of human life, or of the safety of persons exposed to dangerous effects, or there is that entire want of care which would raise the presumption of a conscious indifference to consequences, or which shows wantonness or recklessness, or a grossly careless disregard of the safety and welfare of the public, or that reckless indifference to the rights of others which is equivalent to an intentional violation of them.

*Chrysler Corporation v. Wolmer,* 499 So.2d 823 (Fla.1986), *quoting Carraway v. Revell,* 116 So.2d 16, 20 n. 12 (Fla.1959).

In the instant litigation, it is appropriate to inquire into whether the Defendants' conduct, collectively or individually, in producing or marketing plywood treated with "FRT" could be said to form the factual basis supporting an independent tort. There is deposition testimony that both Georgia Pacific Corporation and Lowe's Corporation were aware in 1984 that FRT plywood was a structurally defective roof sheathing. Additionally, deponents have stated that these companies continued to promote the plywood's further use as a roof sheathing product. This continued use has resulted in damaged roofing construction.

This Court denies the Plaintiff's Motion for Summary Judgment on the issue of Punitive Damages against the Defendants, PLY–GEM INDUSTRIES, INC., HOOVER TREATED WOOD PRODUCTS, INC.,

JOHNSON CONTROLS, INC., GEORGIA PACIFIC CORP., AND LOWE'S CO., INC. (DKT. #: 1, 15, 774, and 775)

## III. STANDING

A fundamental pre-requisite to bringing any claim in federal court is that the litigant must have "standing." To have standing a plaintiff must demonstrate (1) that it has suffered some injury, (2) that the injury can be traced to the challenged conduct, and (3) that the injury can be remedied by an exercise of the court's power. *Valley Forge Christian College v. Americans United for Separation of Church and State,* 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982); *Herlihy v. Ply–Gem Industries, Inc.,* 752 F.Supp. 1282, 1290 (D.Md.1990). Where a plaintiff cannot demonstrate that it has suffered an "injury in fact" for which it may seek legal redress, rather than being a "concerned bystander" to someone else's injury, it has no right to invoke the jurisdiction of the federal court. *Valley Forge,* 454 U.S. at 473, 102 S.Ct. at 759.

To confer federal standing, the legal "injury" of which a plaintiff complains must be "distinct and palpable." *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975). An abstract, speculative injury is not sufficient to confer standing. "[T]he injury or threat of injury must be both real and immediate, not conjectural or hypothetical." *O'Shea v. Littleton,* 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974) (citation omitted). A plaintiff must proffer specific facts that establish its actual or imminent injury; if those facts are not established, then neither is the litigant's right to sue. *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 38–39, 96 S.Ct. 1917, 1924–25, 48 L.Ed.2d 450 (1976).

Pulte maintains that it is suing for damages it suffered because it was fraudulently induced to use a dangerous product which has caused actual personal injury, and which has caused actual property damage to a large number of its customers, and which has posed a real, imminent un-

reasonable danger to the safety and property of all homeowners whose homes contain FRT plywood. Pulte maintains that the injury is to Pulte itself, in the form of exposure to the threat of lawsuits by injured homeowners, as well as the substantial cost of the remedial effort undertaken by Pulte. The Court agrees, and finds that Pulte has standing to proceed.

Johnson Controls argues that Pulte built townhomes which were sold unit by unit to buyers on a fee simple basis. Johnson Controls suggests that Pulte no longer has any interest in the townhomes or the land upon which they sit, and therefore no standing to sue over the condition of the homes' roofs. *Inland Real Estate Corp. v. Tower Constr. Co.*, 174 Ill.App.3d 421, 123 Ill.Dec. 876, 528 N.E.2d 421 (1988).

■■■ Pulte has obtained assignments from some homeowners of their claims. It is axiomatic that an assignee can acquire no greater rights than those possessed by the assignor himself. *Alderman Interior Systems, Inc. v. First National–Heller Factors, Inc.*, 376 So.2d 22, 24 (Fla. 2d DCA 1979). It is unresolved at this time what valid claims the homeowners at issue may have. The Court notes that some types of claims may be assignable in one state and not in another. The Court expects further development of this topic at trial.

## IV. BREACH OF WARRANTY

1. Which State's Substantive Law is to be Applied to Pulte's Warranty Claims Founded in Contract?

■■■ Recognizing that "different substantive issues in a single case may have to be resolved under the laws of different states where the choices influencing decisions differ," *Shapiro v. Associated Int'l Ins. Co.*, 899 F.2d 1116, 1119 (11th Cir. 1990) *citing Foster v. United States*, 768 F.2d 1278, 1281 (11th Cir.1985), this Court is now called upon to determine the choice of law as to Pulte's contract claims by using Florida's choice of law rules with respect to contract actions.

The facts show that Plaintiff, Pulte, purchased and installed "FRT" plywood in primarily six possible jurisdictions—Texas, Maryland, Virginia, Georgia, Illinois, and Florida. Among these jurisdictions, most significant is the difference between Florida law and the law of all the other jurisdictions.

■■■ It is well settled that absent a public policy prohibition, Florida will uphold an express choice of law provision in a contract. *Westerman v. Sears, Roebuck, & Co., C.A.*, 577 F.2d 873 (1978). However, as many of the transactions in this dispute lack such a provision, this Court must examine the relevant facts from two different perspectives. First, the breach of warranty claims founded on the sale of goods must be governed by Florida's adoption of the Uniform Commercial Code. The appropriate choice of law statute then in the sale of goods is Florida Statute Section 671.105 (1992). However, as to the defense put forth by the Defendants that the statute of limitations bars many of the Plaintiff's claims, this must be reviewed under Florida's substantive choice of law rules as to contracts. This is because Florida has expressly repealed the UCC statute of limitation provision (formerly, Florida Statute Section 672.725) and now all actions are governed by Florida's Statute of Limitations provision Florida Statute Section 95.11 (1992). The Court will address this conflict first.

■■■ Traditionally, Florida courts, in determining the choice of law in an action founded on a contract, have applied the lex loci contractus rule. The law of the place where the contract was made or to have been performed prevails. *Goodman v. Olsen*, 305 So.2d 753, 755 (Fla.1974) citing *Wingold v. Horowitz*, 292 So.2d 585, 586 (1974). This means that "the contract is made at the place where the last act necessary to complete the contract is done." *Jemco, Inc. v. UPS, Inc.*, 400 So.2d 499, 500 (Fla. 3rd DCA 1981) (lex loci contractus was the location of the last signature applied to the contract).

Furthermore, "matters bearing upon the execution, validity, interpretation, and obli-

gations of contracts are determined by the laws of the place where the contract was made, whereas matters connected with performance are regulated by the law of the place where the contract is to be performed; matters relating to procedure are dependent upon the law of the forum." *Aetna Cas. & Sur. Co. v. Enright*, 258 So.2d 472, 475 (Fla.Ct.App.1972).

However, this Court agrees with the dicta of the Eleventh Circuit in *Shapiro v. Associated International Insurance Co.*, 899 F.2d 1116 (11th Cir.1990). This Court also finds the lex loci contractus rule "archaic", *id.* at 1119, and believes that the Florida Supreme Court would follow the rule found in the Restatement (Second) of Conflict (1971) Section 188. The "significant relationship" test espoused in the Restatement considers the following contacts as determinative:

1. place of contracting;
2. place of negotiation;
3. place of performance;
4. location of the contract's subject matter;
5. place of incorporation or place of business of the parties.

The place of delivery (which in this dispute is the same as the place of performance) is given highest priority in Restatement (Second) of Conflicts Section 191 (1971) that deals specifically with the transfer of chattels. Comment "c" to Section 191 states that reference to this section only becomes necessary in those states which have not adopted the UCC or have modified it as has Florida as to the Statute of Limitations. Therefore, the law of the forum to which the "FRT" plywood was delivered is to be applied to the statute of limitations issue.

The second perspective required of this Court is that dictated by Florida Statute Section 671.105 (1992) that absent an express choice of law provision, the sale of goods transaction is to be governed by the state bearing an "appropriate relation" to the transaction. Official comment 2 states that "the mere fact that a suit is brought in a state does not make it appropriate to apply the substantive law of that state." Florida Statute Section 671.105 (1992). In the context of this particular application, the Court is satisfied that the state bearing an "appropriate relation" will be the state wherein the townhomes are located.

## V. NEGLIGENCE

■ Hoover Treated Wood Products, Georgia Pacific and Johnson Controls seek summary judgment as to all negligence claims. They argue that Pulte sustained economic losses only, including costs of repair, costs of developing a solution to the problem, certain opportunity costs and lost profits.

Pulte seeks to rely on the narrow exception to the economic loss rule, arguing that FRT plywood endangers human lives. *Council of Co-Owners v. Whiting–Turner Construction*, 308 Md. 18, 517 A.2d 336 (1986). Pulte claims there have been numerous occasions where people have fallen through roofs and there have been a large number of personal injuries from the falls. Pulte cited one lawsuit, filed in state court in Virginia, wherein Pulte was sued for injuries.

The Court denies the motions for summary judgment as to this issue. The question of whether the FRT plywood created a clear danger of death or personal injury remains unresolved at this time. The Court looked for proof such as names, dates and places, but did not find these items. If additional evidence is not produced at trial, the Court will be compelled to find that Pulte is limited to the contractual remedies of the UCC.

■ The issue of negligence raises the specter of the "economic loss" doctrine. The "economic loss" doctrine precludes recovery in tort for purely economic damages. *Casa Clara Condo. v. Charley Toppino*, 588 So.2d 631, 633 (Fla.App. 3 Dist. 1991). "[I]f the plaintiff has not sustained any personal injury or property damage, he cannot recover" *Casa Clara*, 588 So.2d at 633; citing *GAF Corp. v. Zack Co.*, 445 So.2d 350 (Fla.App. 3 Dist 1984).

■ The Court notes that in this case Plaintiff will not be able to establish damage to "other property" by the deteriorated

roof sheathing. In the context of actions in tort, in determining whether a party has suffered "property damage" the question for the court is whether property other than the defective property itself, or property other than that which the defective property is an integral part of has been damaged. *Aetna Life & Casualty Co. v. Therm–O–Disc, Inc.*, 511 So.2d 992 (Fla. 1987). Once the roofs were installed, they became an integral part of the homes. Any costs incurred as a result of damage to those roofs, or damage to the structure of the units, is not damage recoverable in tort.

(Dkt. 768, 769, 771, 782).

## VI. MISREPRESENTATION AND FRAUD

1. Whether any Defendant can be Held Liable to Pulte for Fraud.

Questions of fraud, bad faith, and materiality are normally factual issues for the jury. In order to survive a motion for Summary Judgment, the moving party must demonstrate the non-existence of triable issues of material fact. *Holl v. Talcott*, 191 So.2d 40, 42 (Fla.1966). The movant must prove this negative conclusively, such as to overcome all reasonable inferences which may be drawn in favor of the opposing party. *Holl*, at 42. Further, Fed. R.Civ.P. 56(e) provides:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not respond, summary judgment, if appropriate, shall be entered against him.

Fundamental common-law principles continue to govern commercial transactions where not in conflict with the express provisions of the Uniform Commercial Code. In most instances, Article 2 of the Uniform Commercial Code is in general accord with pre-code case law. Therefore, most of the principles elucidated in pre-code law inuring in Florida precedent continue to apply.

To assert a valid cause of action under Florida law based on an allegation of fraud, Pulte must establish: (1) a misrepresentation of material fact or suppression of the truth; (2) [a] knowledge of the representor of the misrepresentation, or [b] representations made by the representor without knowledge as to either truth or falsity, or [c] representations made under circumstances in which the representor ought to have known, if he did not know, of the falsity thereof; (3) an intention that the representor induce another to act on it; and (4) resulting injury to the party acting in justifiable reliance on the representation. *Albertson v. Richardson–Merrell, Inc.*, 441 So.2d 1146, 1149–50 (Fla. 4th DCA 1983); *Refined Sugars, Inc. v. Southern Commodity Corp.*, 709 F.Supp. 1117, 1121 (S.D.Fla.1988). "Fraud can be established by proof that [the defendant] made a false representation without knowledge of its truth or falsity, or under circumstances in which he should have known of its falsity." *Young v. Johnson*, 538 So.2d 1387, 1389 (Fla. 2d DCA 1989); *Alna Capital Associates v. Wagner*, 758 F.2d 562, 566 (11th Cir.1985). Fraud may also arise from circumstances which indicate concealment or nondisclosure of a material fact where the buyer does not have an equal opportunity to become apprised of the material fact, or where the seller has the duty to speak.

In the instant litigation, Pulte has alleged misrepresentation of pertinent product information and willful, knowing concealment of scientific, investigative report data results upon the part of all defendants, individually and collectively. This information allegedly indicated a potentially devastating product deficiency as a result of the FRT chemical treatment. In response, Defendants claim that Pulte is a sophisticated corporation having access to the same general information available to the Defendants, precluding justifiable reliance. However, due to the myriad of disputed facts, the Court is unable to ascertain the factual basis of any purported representations concerning the marketing and sale of FRT plywood upon the part of any Defendant. The nature and extent of any representation made, the extent to

which Pulte's reliance is established, and sufficiency of justification are issues of disputed fact more properly decided by the jury. Further, the question remains unresolved at present as to whether Defendants had a duty to speak to the homeowners about the danger created by the use of FRT plywood in their homes.

■ Additionally, when the circumstances surrounding the alleged fraudulent conduct are inherently based in a contractual claim, the mere existence of a contract claim does not automatically vitiate all causes of action in tort. The standard for determining whether an action for fraud survives is more particular. The controlling issue is whether the Plaintiff has requested compensatory damages in a count for tort which are in any way separable or distinguishable from [its] compensatory damages sought on the breach of contract action. *Kee v. National Reserve Life Ins. Co.*, 918 F.2d 1538, 1543 (11th Cir.1990). Arguably, Pulte has alleged a factual basis supporting a cause of action for the independent tort of fraud, thus avoiding the limiting principal of the Economic Loss doctrine. The damages which Plaintiff claims to have flowed from any fraudulent actions upon the part of the Defendants are distinguishable from damages which would flow from a breach of warranty action, arising from the same circumstances.

Accordingly, the Court must conclude issues of material fact exist with regard to Plaintiff's claim of fraud, and summary judgment must be denied for the Defendants. (DKT.#: 756, 757, 774, 775, 782, 789, 817, 833, 879, and 888).

## VII. STRICT LIABILITY

1. Whether Pulte is Precluded From Seeking Recovery of Damages From Georgia–Pacific Corporation (or Hoover Treated Wood, Inc.) Relating to any Particular Building Unit Unless Pulte can Establish That Georgia–Pacific, Inc. Sold (or Hoover Treated Wood, Inc. Treated) the FRT Plywood Used as Roof Sheathing in That Particular Unit.

■ Yes. Should the Plaintiff's allegations of tortious conduct against the Defen-

dants be allowed, Plaintiff will have the burden of establishing the necessary causation between the injury suffered and the Defendant's product.

This Motion for Partial Summary Judgment is before the Court from Defendants, Georgia Pacific Corp. and Hoover Treated Wood, Inc. The Court must view the facts in the light most favorable to the non-moving party, Pulte Home Corp., in this instance. *Sweat v. The Miller Brewing Co.*, 708 F.2d 655 (11th Cir.1983).

Defendant Georgia Pacific Corporation is the manufacturer of raw plywood and the vendor of FRT plywood. Hoover Treated Wood, Inc. treats raw plywood with fire retardant. In their respective Motions for Partial Summary Judgment on the Issue of Product Identification (Docket # 768, 769, 772), these Defendants assert that Pulte has no claim against them in negligence, if at all, except for those instances where Pulte can establish that the FRT plywood used as roof sheathing was either supplied by Georgia Pacific (as to Georgia Pacific) or treated by Hoover (as to Hoover Treated Wood). The Court notes the failure of the Plaintiff to file a response to the issue of Product Identification or to argue that any alternative theory of liability might apply other than traditional theories of tort law.

Jurisdiction in this action is founded upon diversity of citizenship, 28 U.S.C. section 1332. This Court, while sitting in diversity, is bound to apply state substantive law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The question of whether Pulte is required to meet the burden of product identification is therefore a question to be decided under Florida law. The Court notes that judicial review under any of the possible relevant jurisdictions (Florida, Texas, Illinois, Georgia and Virginia) will have the same probable outcome on the issue of product identification. *See, Shapiro v. Associated Int'l Ins. Co.*, 899 F.2d 1116, 1118 (11th Cir. 1990).

■ It is well established under Florida law and elsewhere that identification of the

product that caused the harm as the one sold or manufactured by the defendant is an essential element of traditional tort law. *See* generally, 63 Am.Jur.2d Products Liability section 164 (1974 & Supp.1992). *See* also, 41 Fla.Jur.2d Products Liability section 63 (1983 & Supp.1992); *Celotex Corp. v. Copeland*, 471 So.2d 533, 537 (Fla.1985) (Holding that market share liability does not apply "is based principally upon the fact that Copeland was able to identify many of the manufacturers of the products to which he was exposed."); *Blackston v. Shook & Fletcher Insulation Co.*, 764 F.2d 1480, 1481 (11th Cir.1985) (Applying Georgia law, "... threshold for every theory is proof that an injured plaintiff was exposed to ... products for which the defendant is responsible."); *Gaulding v. Celotex Corp.*, 772 S.W.2d 66, 68 (Tex.1989) ("A fundamental principle of traditional products liability law is that the plaintiff must prove that the defendants supplied the product which caused the injury."); *Herlihy v. Ply-Gem Industries, Inc.*, 752 F.Supp. 1282, 1290 (D.Md.1990) ("The Court noted that Maryland had always adhered to the traditional view that a plaintiff must attribute the defect of a product to the seller and must further establish a causal relation between the defect and the injury", citing *Tidler v. Eli Lilly*, 851 F.2d 418, 425 (D.C.Cir.1988)); *Smith v. Eli Lilly & Co.*, 137 Ill.2d 222, 148 Ill.Dec. 22, 26, 560 N.E.2d 324, 328 (1990) ("A fundamental principal of tort law is that the plaintiff has the burden of proving by the preponderance of the evidence that the defendant caused the complained of harm or injury."); *In re Fela Asbestos Cases*, 646 F.Supp. 610, 614 (W.D.Va.1985) (Product identification was a necessary element to be proven by plaintiff with sufficient evidence).

The requirement for product identification in products liability is an important one.

> The identification element of causation in fact serves an important function in tort law. Besides assigning blame-worthiness to culpable parties, it also limits the scope of potential liability and thereby encourages useful activity that would

otherwise be deterred if there were excessive exposure to liability. *Smith v. Eli Lilly & Co.*, 137 Ill.2d 222, 148 Ill.Dec. 22, 27, 560 N.E.2d 324, 329 (Ill.1990), citing Fischer, *Products Liability—An Analysis of Market Share Liability*, 34 Vand.L.Rev. 1623, 1628–29 (1981). Additionally, without this element every manufacturer and vendor would become a virtual insurer of all like products on the market. *See, Blackston v. Shook & Fletcher Insulation Co.*, 764 F.2d 1480, 1483 (11th Cir.1985).

The element of product identification is so fundamental that only in a very limited set of circumstances are courts willing to apply an alternative theory of liability that circumvents this requirement. *See, Conley v. Boyle Drug Company*, 570 So.2d 275, 280 (Fla.1990) (Florida adopts market share liability in DES cases "where there is an inherent inability to identify the manufacturer of the product that caused the injury" *citing Celotex Corp. v. Copeland*, 471 So.2d 533, 537 (Fla.1985)); *Ray v. Cutter Laboratories*, 754 F.Supp. 193, 195 (M.D.Fla.1991) (Florida does not recognize concert of action, alternate liability, nor enterprise liability and only recognizes market share liability as defined by *Conley*. After *Ray*, market share liability may be applicable in DES cases and AIDs acquired through contaminated Factor VIII, which is a treatment for hemophiliacs.); *Chapman v. American Cyanamid Co.*, 861 F.2d 1515, 1520 (11th Cir.1988) (Georgia has not adopted alternative liability); *Blackston v. Shook & Fletcher Insulation Co.*, 764 F.2d 1480, 1483 (11th Cir.1985) (Georgia doesn't adopt market share); *Lee v. Baxter Healthcare Corp.*, 721 F.Supp. 89, 94 (D.Md.1989), *aff'd* 898 F.2d 146 (4th Cir.1990) (no cause of action for concert of action, market share liability, enterprise liability nor alternative liability in Maryland). As Plaintiff has not put forward an alternative theory of liability, this Court is not required to discuss it further.

Consequently, as a matter of law, Pulte Home Corporation is required to present evidence that Georgia Pacific Corporation was the vendor of the FRT plywood used as roof sheathing in order to hold Georgia

Pacific liable or that Hoover Treated Wood, Inc. treated the FRT plywood used on a particular unit in order to hold Hoover Treated Wood liable.

Therefore, Defendants' Hoover Treated Wood, Inc. and Georgia Pacific Corp. Motions for Partial Summary Judgment on the issue of product identification is denied for there remains a factual dispute as to which building units contained FRT plywood either supplied by Georgia Pacific as vendor or treated by Hoover Treated Wood, Inc. (DKT.#: 768, 772, and 888)

2. Product Defect

Whether Hoover Treated Wood, Inc. "FRT" Plywood is a Defective Product as a Matter of Law.

 In its Order dated November 14, 1990, this Court denied Pulte's Motion for Summary Judgment, dated March 12, 1990, on the issues of Product Defect and Failure to Warn. At that time, the Court stated:

"As to whether either Defendant is liable for selling a defective product, the Court finds that this is a factual determination which cannot be resolved at this time.... Nevertheless, the deposition testimony completed at this time clearly depicts liability as a factual dispute."

ORDER ON MOTIONS dated November 14, 1990 @ p. 3. With over 800 more documents now part of discovery in this case, the Court is not predisposed to change its position. Nor does mere allegations by Pulte that the Defendant's depositions referred to in the Court's November 14th Order were "sham affidavits filed to defeat summary judgment", (Pulte's Renewed Motion for Summary Judgment on the Issue of Product Defect and Failure to Warn dated February 10, 1992 @ p. 2), persuade the Court. However, the parties may find additional guidance as to matters of law of assistance.

Inherent in a cause of action for product liability is whether there is a product defect. "The necessity of proving defectiveness of the product applies no matter what theory governs the particular action: negligence, breach of express or implied sales warranty, strict liability, or any other theo-

ry." 63 Am.Jur.2d Products Liability Section 224 (1984 & Supp.1992).

Pulte in its Amended Complaint has alleged Breach of Implied and Express Warranties (Count I), Negligence (Count IV) and Strict Liability (Count V). It is important to note that many of the elements required to be proven by the Plaintiff and the damages available to the Plaintiff differ for each Count. Additionally, the Florida Supreme Court has said:

We recognize that there are two parallel but independent bodies of products liability law. One, strict liability [and negligence], is an action in tort; the other, implied warranty, is an action in contract.

*West v. Caterpillar Tractor Co., Inc.*, 336 So.2d 80, 88 (Fla.1976).

However, no matter what theory Plaintiff's case is founded upon, Plaintiff bears the burden of proving by a preponderance of the evidence these common elements: "(1) that a defect was present in the product; (2) that it caused the injuries complained of; and (3) that it existed at the time the retailer or supplier [or manufacturer] parted possession with the product." *Cassisi v. Maytag Co.*, 396 So.2d 1140, 1141 (Fla. 1st DCA 1981), citing 2 Frumer and Friedman, Products Liability, Section 16A(4)(e)(i) at 3B–88, 89 (1980).

 Historically, there has been a difference among these theories as to the actual test applied in determining that a product is defective. In negligence, the test for product defect is that a manufacturer has a duty to exercise reasonable care so that its products will be reasonably safe for use in a foreseeable manner and that he has breached that duty. *Witt v. Norfe, Inc.*, 725 F.2d 1277, 1278 (11th Cir. 1984). In a breach of implied warranty, the test is stated as a product is defective if it is not reasonably fit for the intended use or reasonably foreseeable use at the time it left the possession of the manufacturer. *In the Matter of Standard Jury Instructions*, 435 So.2d 782 (Fla.1983). In the breach of an express warranty, the test of defectiveness is whether the product per-

forms in accordance with the express warranty given. 63 Am.Jur.2d Products Liability Section 224 (1984 & Supp.1992).

▪ Finally, in strict liability, the product is defective if, when it left the manufacturer, it was in a defective condition unreasonably dangerous to foreseeable users and bystanders. *West v. Caterpillar Tractor Co., Inc.*, 336 So.2d 80, 87 (Fla.1976) in adopting for Florida the Restatement (Second) of Torts Sec. 402A (1965). This test has been clarified in *Cassisi v. Maytag Co.*, 396 So.2d 1140 (Fla. 1st DCA 1981) by a careful review of the intent of the drafters of the Restatement (Second) of Torts (1965) and determining that defective and unreasonably dangerous are redundant terms. *Id.* at 1144. That the test, therefore, in strict liability for product defect is "Were the ordinary consumer's expectations frustrated by the product's failure to perform under the circumstances in which it failed?" *Id.* at 1145. Additionally, if, as here, a plaintiff alleges defective design in strict liability, there is an another test which this Court believes would be adopted by the Florida Supreme Court: a risk-benefit analysis.

This is the test of choice by Professor Keeton:

A product is defective if it is unreasonably dangerous as marketed. It is unreasonably dangerous if a reasonable person would conclude that the magnitude of the scientifically perceivable danger *as it is proved to be at the time of trial* (emphasis in the original) outweighed the benefits of the way the product was so designed and marketed.

P. Keeton, *Product Liability and Meaning of Defect*, 5 St. Mary's L.J. 30, 37–38 (1973). In *Auburn Machine Works Co. v. Jones*, 366 So.2d 1167 (Fla.1979), the court in rejecting the patent danger doctrine discussed, in dicta, the applicability of a test in determining product design defect in strict liability that would balance the likelihood of harm against the good provided by the product. *Id.* at 1170. In *In the Matter of Standard of Std. Jury Instructions*, 435 So.2d 782 (Fla.1983), the court adopted jury instructions without passing on issues of law for strict liability for a design defect which gave an option for trial judges to use either or both tests. In *Radiation Technology, Inc. v. Ware Construction Co.*, 445 So.2d 329 (Fla.1983), the court suggested a balancing test to determine if an inherently dangerous product was defective. Finally, in *Cassisi v. Maytag Co.*, 396 So.2d 1140 (Fla. 1st DCA 1981) (cited favorably in *In Matter of Std. Jury Instructions*), the court, in dicta, suggests that this test should be added to the standard consumer expectation test for design defect.

This additional test is limited to an allegation of a design defect in strict liability though at this time. Adoption of this second test would allow a plaintiff to raise a presumption of defect by a showing that the product malfunctioned. The defendant must then show that the benefits of the design outweigh the risks inherent in the design. *Cassisi* at 1145 citing *Barker v. Lull Engineering Co.*, 573 P.2d 443, 456 (Ca.1978).

Any real distinction in the tests for defect under the various theories is more academic than actual as evidenced by an Eleventh Circuit decision, *Witt v. Norfe, Inc.*, 725 F.2d 1277 (11th Cir.1984).

In light of the suggestion in *Cassisi* that the provision in Sec. 402A that a defective product be dangerously so is merely excess baggage, any distinction drawn between strict liability and negligence on the grounds that Sec. 402A requires that the defect be dangerous, while negligence does not, would be specious.

*Id.* at 1279. The court in *Witt* ruled that it was fatally inconsistent for a jury to find that a product was negligently designed, i.e. was defective, under a theory of negligence but that it was not defective under strict liability or breach of implied warranties theories.

These rulings subsequent to *West v. Caterpillar Tractor Co., Inc.*, 336 So.2d 80 (Fla.1976) give added weight to the statement in *West* that:

In a products liability suit against a manufacturer of a commercial product by an ultimate consumer or use, the sole test has been whether or not the product was

reasonably safe for its intended use, as manufactured and designed, when it left the plant of the manufacturer. *Id.* at 84.

However, the Plaintiff's burden of establishing a defect is augmented beyond this first question depending on the type of defect alleged: 1) design defect, 2) manufacturing defect, or 3) defect due to a failure to warn when such a duty existed. In Pulte's Renewed Motion, they have alleged that Hoover "FRT" plywood is defective because 1) it is unreasonably dangerous, 2) it is defectively designed, 3) Hoover failed to warn of danger and 4) Hoover failed to give adequate instructions.

A design defect arises when due to a design error the product as manufactured gives rise to an unforeseen hazard. *Cassisi v. Maytag,* 396 So.2d 1140, 1145 (Fla. 1st DCA 1981). A manufacturing defect is an unexpected malfunction of the product as designed under foreseeable use and such a defect is not alleged in this case.

Failure to warn gives rise to a defective product when the manufacturer has knowledge of a latent defect which is not easily discoverable and renders the article not reasonably safe or the product itself is inherently dangerous. This latter characterization is usually reserved by the courts for products such as pharmaceutical and toxic chemicals, though not limited to products which threaten personal injury. See *Radiation Technology, Inc. v. Ware Construction Co.,* 445 So.2d 329 (Fla.1983). In *Thursby v. Reynolds Metals Co.,* 466 So.2d 245 (Fla. 1st DCA 1985), the court affirmed the trial court's instructions to the jury on the issue of failure to warn. The instruction stated that there is a duty to warn "when the hazards associated with the use of a product are not obvious, reasonably apparent, or not as well known to the user as to the manufacturer." *Id.* at 251. These are separate questions of fact for the trier of fact and a failure to warn is not an automatic issue in every cause of action under a theory of strict liability, negligence or breach of implied warranty. The law does not state "that to prevent a

product from being deemed unreasonably dangerous [i.e., defective] a warning must always be given." *Id.*

3. Whether Pulte is Precluded From Recovering in Tort as a Result of the "Economic Loss" Doctrine.

No. The economic loss doctrine bars tort actions for recovery of economic damages without accompanying physical or property damage. *Florida Power & Light Co. v. Westinghouse Corp.,* 510 So.2d 899 (Fla.1987). "Economic loss" has been defined as "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits—without any claim of personal injury or damage to other property ..." Note, *Economic Loss in Products Liability Jurisprudence,* 66 Colum.L.Rev. 917, 918 (1966). Such economic losses are said to occur when the product injures only itself. *East River Steamship Corp. v. Transamerica Delaval Inc.,* 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986). The weight of authority states that such economic claims are founded in contract law and warranty law rather then in tort law. *Seely v. White Motor Co.,* 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145 (Cal.1965); *Chicago Board of Education v. A, C & S, Inc.,* 171 Ill.App.3d 737, 121 Ill.Dec. 643, 525 N.E.2d 950 (1988); *Chicago Heights Venture v. Dynamit Nobel of America, Inc.,* 782 F.2d 723 (7th Cir.1986); *McClain v. Harveston,* 263 S.E.2d 228 (Ga.Ct.App.1979); *Redarowicz v. Ohlendorf,* 92 Ill.2d 171, 65 Ill.Dec. 411, 441 N.E.2d 324 (1982); *Rotonda Condominium Unit Owners Ass'n v. Rotonda Associates,* 238 Va. 85, 380 S.E.2d 876 (1988); *Sensenbrenner v. Rust, Orling & Neale, Architects, Inc.,* 236 Va. 419, 374 S.E.2d 55 (1988); *Wood Products, Inc. v. CMI Corp.,* 651 F.Supp. 641 (D.Md.1986).

In certain situations, the Court may find that the "economic loss" doctrine does not bar recovery. In *Ernest W. Hahn, Inc. v. Armco Steel Co.,* 601 P.2d 152 (Utah 1979), the court held that one who sells a product in an unreasonably dangerous condition is subject to liability for physical harm caused to the user or ultimate consumer or to his

property. Furthermore, a duty to warn of a product's defects of which the seller is aware goes to the conduct governed by tort law rather than the quality of the product. *Miller Industries v. Caterpillar Tractor Co.*, 733 F.2d 813 (11th Cir.1984). In determining whether tort law is applicable, the Third Circuit determined that the guiding factors are the nature of the defect and the type of risk it poses. *Pennsylvania Glass Sand Corp., v. Caterpillar Tractor Co.*, 652 F.2d 1165 (3d Cir.1981).

Florida courts follow the economic loss rule but would permit recovery for personal injury or property damage. *Affiliates for Evaluation & Therapy, Inc. v. Viasyn Corp.*, 500 So.2d 688 (Fla.Dist.Ct.App. 1987); *AFM Corp. v. Southern Bell Telephone & Telegraph Co.*, 515 So.2d 180 (Fla.1987); *American Universal Insurance Group v. General Motors Corp.*, 578 So.2d 451 (Fla.Dist.Ct.App.1991).

In order for the Court to find damage beyond economic loss, Pulte will have to prove other damages or personal injury. The Court is not able to make such a determination at this time due to the lack of factual information presented to it. All Motions for Summary Judgment pertaining to strict liability and economic loss are hereby denied. (DKT.#: 769, 771, 775, 782, 789, 797, 798, 813, 888, 1016, and 1017)

## VIII. CORPORATE VEIL: JOHNSON CONTROLS AND HOOVER UNIVERSAL

Pulte and Johnson Controls have filed cross-motions for summary judgment. Pulte seeks summary judgment against Johnson Controls under various theories: Pulte claims Johnson Controls assumed the liabilities of Hoover Universal arising out of Hoover's treated wood division prior to October 1, 1983, rendering Johnson Controls liable for FRT plywood which was designed, promoted and sold prior to that date. Pulte further claims that Johnson Controls appointed Hoover Treated Wood Products as its agent to manage claims, and Johnson Controls is liable for the actions of its agents. Pulte further claims that Johnson Controls conspired with, and aided and abetted, the fraudulent practices of Hoover Treated. Pulte further claims that Pulte should be able to pierce the corporate veil of Hoover Universal to reach Johnson Controls because Hoover Universal and Johnson Controls are alter egos.

Johnson Controls responds:

### 1. Admission of No Direct Liability

Pulte concedes that Johnson Controls has never sold FRT plywood. Pulte further concedes that Johnson Controls has never owned any other entity while that entity was in the business of producing or selling FRT plywood. (Pulte's Answers and Objections to Johnson Controls Interrogatories, Nov. 21, 1989, pp. 5–10).

### 2. Choice of Law

A federal court exercising diversity jurisdiction under 28 U.S.C. § 1332 must apply the choice-of-law rules of the state it which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Florida's conflict-of-law principles will be applied to determine which state's substantive law should be applied to determine Johnson Controls' liability for acts of Hoover Universal.

■■■ The Court finds that Michigan law would apply. In *International Insurance Co. v. Johns*, 874 F.2d 1447 (11th Cir.1989), the Eleventh Circuit held that the law of the state of incorporation governs the liabilities of the officers or directors to the corporation under Florida's choice-of-law principles. The Court further notes that there is no material difference between Florida law and Michigan law concerning piercing the corporate veil. *Compare Dania Jai–Alai Palace, Inc., v. Sykes*, 450 So.2d 1114 (Fla.1984); *Klager v. Robert Meyer Co.*, 415 Mich. 402, 329 N.W.2d 721 (1982).

### 3. Theories of Derivative Liability

Pulte argues:

1. That the corporate veil of Hoover Universal should be pierced to hold Johnson Controls vicariously liable for the actions of Hoover Universal's predecessor in producing and selling FRT plywood prior to October 1, 1983, be-

cause Johnson Controls later owned and controlled Hoover Universal (Amended Complaint, paragraph 6).

2. That the corporate veil of Hoover Universal should be pierced to hold Johnson Controls vicariously liable for Hoover Universal's alleged failure to warn Pulte of problems with FRT plywood or failure to cause a recall (Pulte's Answers and Objections to Johnson Controls' Interrogatories, Nov. 21, 1989, pp. 7–8).

3. That Johnson Controls has merged with or otherwise assumed the liabilities of Hoover Universal (Pulte's counsel at Killian Deposition, at p. 58).

#### 4.(a) Standard for Piercing the Corporate Veil

The standard for piercing the corporate veil in a parent-subsidiary relationship appears in *Gledhill v. Fisher & Co.*, 272 Mich. 353, 262 N.W. 371, 372 (1935):

Before the corporate entity may be properly disregarded and the parent corporation held liable for the acts of the subsidiary, I believe it must be shown not only that *undue* domination and control was exercised by the parent corporation over the subsidiary, but *also* that the control was exercised in such a manner as to *defraud and wrong* the complainant, *and* that *unjust loss* or injury will be suffered by the complainant as the result of such domination unless the parent corporation be held liable.

*Gledhill*, 262 N.W. at 372 (emphasis added). Under *Gledhill*, a plaintiff must prove both 1) fraud or wrong by the parent corporation and 2) resulting unjust loss to the plaintiff.

▮▮▮▮ It is well settled that mere ownership by one corporation of all the stock of another corporation is not, in itself, sufficient to warrant disregard of the subsidiary's separate existence. *Klager v. Robert Meyer Co.*, 415 Mich. 402, 329 N.W.2d 721, 727 n. 6 (1982). Further, common officers and directors in a parent and subsidiary does not destroy the separate identity of either corporation. *Klager*, 329 N.W.2d at 727 n. 6.

In *Maki v. Copper Range Co.*, 121 Mich. App. 518, 328 N.W.2d 430 (1982), the Court rejected plaintiff's argument that the parent's control over the activities of its subsidiary provided a sufficient basis for disregarding the subsidiary's separate existence:

To hold a parent corporation responsible for injuries to employees of the subsidiary merely because of the control inherent in the parent-subsidiary relationship would destroy the long established protection afforded shareholders by incorporation. The parent-subsidiary relationship, by definition, includes the same elements which plaintiffs argue show 'retained control' by the parent. In such a relationship, the parent, as owner of all or most of the subsidiary's stock, is able to exert control over the subsidiary. To protect its investment and control of the subsidiary, the parent and subsidiary frequently share directors or officers and the parent may monitor the subsidiary's fiscal activities and dealings ... For these reasons, courts have recognized that majority stock ownership and common directors and officers, alone, will not provide a sufficient basis for disregarding the fiction of these corporations' separate existence.

(citation)

▮▮▮▮ In order to pierce the corporate veil under Michigan law, the Court must find the presence of deception by defendant and reliance by plaintiff. *Finley v. Union Joint Stock Land Bank of Detroit*, 281 Mich. 214, 274 N.W. 768, 770 (1937). This is not a case in which a corporation was established or manipulated for the shareholders to evade responsibility to creditors. See, e.g. *Bodenhamer Building Corp. v. Architectural Research Corp.*, 873 F.2d 109, 112 (6th Cir.1989); *Acton Plumbing & Heating Co. v. Jared Builders, Inc.*, 368 Mich. 626, 118 N.W.2d 956, 958 (1962).

▮▮▮▮ From 1979 to 1983, Pulte purchased FRT plywood from Hoover Universal. During that period of time, Johnson Controls did not own stock in Hoover Universal. The record is bare of any item which supports the theory that Pulte was

somehow misled as to ownership during that period of time by Hoover or Johnson Controls. Further, there is no unjust loss, such as insolvency, undercapitalization or a statutory exemption from liability for the subsidiary that makes it impossible for Pulte to satisfy its judgment from the subsidiary's assets alone. It is not disputed that Hoover Universal today has sufficient assets to satisfy any potential claim by Pulte. The Court therefore grants summary judgment to Johnson Controls on this issue.

### 4.(b) *Failure to warn or Failure to cause recall*

 Pulte further contends that Johnson Controls aided and abetted the fraudulent conduct of Hoover Treated and Ply Gem, as well as the design, manufacture and sale of FRT plywood by Hoover. Pulte argues that as a matter of law Johnson Controls' actions and omissions render it liable.

Pulte's claims are premised on the fact that Johnson Controls and Hoover Treated Wood Products worked together to defend certain FRT claims, and Pulte argues that Johnson Controls' behavior as to those claims renders it liable for them. Pulte also argues that Johnson Controls is liable by virtue of its silence for the alleged fraud of Hoover Treated Wood Products.

All motions for summary judgment as to this issue are denied due to the presence of material factual disputes.

## IX. CORPORATE VEIL: PLY GEM INDUSTRIES, INC. AND HOOVER TREATED WOOD PRODUCTS

 Pulte claims that Ply Gem is liable for the actions or inactions of Hoover Treated because Ply Gem owns and controls Hoover Treated, who manufactured and sold the FRT plywood at issue. Pulte further claims that Ply Gem is liable for aiding and abetting a fraud on Pulte. Ply Gem seeks the dismissal of all of Pulte's claims, arguing that Pulte's allegations are inadequate as a matter of law.

In order to disregard the corporate entity, the Court must find that the parent corporation totally dominates the subsidiary, so that the latter has no separate existence or functions apart from the parent corporation, and that the subsidiary was created or used by the parent for an unlawful or fraudulent purpose. Ply Gem claims that undisputed facts establish that Ply Gem did not dominate the activities of Hoover or abuse its separate corporate form. Those facts are summarized below.

Ply Gem contends that it has a corporate philosophy of noninterference and fostering subsidiary entrepreneurship in its relations with Hoover Treated. Since the Hoover acquisition, Hoover's management and staff have remained intact, and continue to operate the company as they did before the acquisition, using the same plants and personnel, selling to the same customers and utilizing the same suppliers. Hoover's management makes the day-to-day managerial decisions for Hoover without the involvement of Ply Gem's officers or employees.

As Hoover's sole shareholder, Ply Gem has always been represented on Hoover's board, and two Ply Gem directors and one Ply Gem officer serve on Hoover's five-person board of directors. The respective board of directors of Ply Gem and Hoover hold separate meetings and maintain separate minutes.

Ply Gem and Hoover have no common operating officers. Ply Gem and Hoover have no employees in common, and all hiring, firing, and promotion decisions are made exclusively by Hoover management. Hoover's employee salaries and bonuses are set and paid by Hoover.

The separation of Hoover's and Ply Gem's funds is strictly maintained on the books of Hoover and Ply Gem. There is no commingling of funds, and Ply Gem does not treat Hoover's assets as its own. Hoover maintains separate bank accounts and Hoover's accounting functions are performed by Hoover's controller at Hoover's corporate headquarters in Thomson, Georgia. Ply Gem's headquarters and all of Ply Gem's corporate personnel are located in New York City.

The separate legal existence and operation of Hoover has always been strictly maintained. Ply Gem and Hoover do not share a logo, common officer or facilities, nor do they hold themselves out to Hoover's customers as on entity.

Hoover has been a fully capitalized, solvent corporation at all relevant times, with a net worth that increased by over $10 million between its establishment in 1983 and December 31, 1989, and a current net worth of approximately $9.4 million.

Hoover prepares its own annual budget plan, which is reviewed and approved by Ply Gem. Ply Gem has never prevented Hoover from taking any action proposed by its management. Hoover is not required to, and does not, obtain Ply Gem's approval before marketing new products; and all of Hoover's licenses, patents and trademarks are held by Hoover.

The only payments made by Hoover to Ply Gem are reasonable amounts that it, like the other operating subsidiaries, pays to compensate Ply Gem for financing and other services that Ply Gem provides to it, and provide Ply Gem with a reasonable return on its investment. Ply Gem charges Hoover a working capital fee that is calculated at a fixed percentage of Hoover's net working capital. The percentage rate changes annually and reflects the interest rate paid by Ply Gem to its own lenders. This rate is lower than any fixed rate that would be available to Hoover from outside lenders if Hoover were to finance its working capital. Hoover has not paid dividends to Ply Gem; its earnings have been reinvested in the business.

Hoover is also charged a fee for its share of various centralized services. This fee has for the last three fiscal years been set at approximately 1.5% of Hoover's revenue. The services include tax preparation and planning; payment of federal income taxes; centralized cash management; administration of retirement programs; health and life insurance administration; purchasing of casualty and liability insurance; employment of a director of merchandising; employment of a director of purchasing; and a variety of consulting services.

The Affidavit of Herbert P. Dooskin, Affidavit of Jeffrey Silverman, as well as the articles in Exhibit A, support Ply Gem's contention that Ply Gem does not dominate Hoover Treated Wood Products. The affidavit of Thomas Dickson, the corporate controller, as well as the affidavit of Barry Holden, President of Hoover Treated, further support this contention. Pulte has brought forth nothing which controverts these affidavits and other items. The Court grants summary judgment to Ply Gem as to this issue.

## X. ASSUMPTION OF LIABILITIES and GUARANTEE

1. Whether Ply Gem Industries, Inc. Assumed the Liabilities of Hoover Treated Wood Products, Inc. Pursuant to an Assets Purchase Agreement so as to be Liable for Damages Incurred by Pulte.

 During 1983, Ply Gem negotiated with Hoover Universal in an effort to purchase Hoover Universal's wood-treating division. These negotiations culminated in the execution of an Assets Purchase Agreement, dated September 28, 1983. The Assets Purchase Agreement had three parties: (1) Hoover Universal was the "Seller"; (2) Hoover Treated was the "Buyer"; and (3) Ply Gem, which "guarantees the obligations of Buyer hereunder." The Court notes pursuant to the Assets Purchase Agreement the governing law will be that of New York.

Paragraph 2 of the Assets Purchase Agreement states:

Section 2. *Assumption of Liabilities.* 2.01 *Assumed Liabilities.* Subject to all of the terms and conditions of this Agreement, the Buyer hereby agrees to assume and pay, perform or otherwise discharge on and after the Closing Date, as the same shall become due in accordance with their respective terms, the following liabilities and obligations of the Division and no others; (b) *those liabilities and obligations incurred by the division in the ordinary course of its business after September 30, 1983 in*

*accordance with the terms of this Agreement* (except to the extent they are otherwise excluded hereunder) (collectively, the "Assumed Liabilities"). [Asset Purchase Agreement at pp. 5–6. Emphasis added.]

2.03 *Retained Liabilities.* All liabilities of the Division not assumed under Section 2.01 of this Agreement (collectively, the "Retained Liabilities") are not to be assumed by Buyer and shall be paid or performed by the Seller. *The Retained Liabilities shall include, but shall not be limited to, the following:*

(c) Liabilities of the Seller and/or the Division in respect of allegedly defective goods manufactured and shipped by the Division *prior to October 1, 1983.* In connection with the foregoing, Seller shall be responsible for, without limitation, all tort claims, claims otherwise seeking special or consequential damages attributable to the allegedly defective goods or materials or claims seeking any other remedy relating to defective goods or materials.

(d) Liabilities or obligations arising out of the breach by the Seller at any time prior to Closing Date of any contract, lease or other commitment;

(f) Liabilities for alleged damages to third parties or their property based upon occurrences or states of facts existing prior to the Closing Date.... [Assets Purchase Agreement at pp. 7–8.] [Emphasis added.]

The following words appear at the end of the Assets Purchase Agreement:

Ply Gem Industries, Inc., by its execution below, guarantees the obligations of Buyer hereunder.

Pulte contends that Ply Gem is liable to Pulte as a guarantor because Hoover Treated's liability to Pulte was incurred in the ordinary course of Hoover Treated's business. Pulte claims that although it is not named in the Assets Purchase Agreement, Pulte is one of the class of people to whom Hoover Treated would necessarily become liable in the ordinary course of business.

Ply Gem argues that the clear language of the Assets Purchase Agreement allocates liability between Hoover Treated (Buyer) and Universal (Seller) and no one else. The Court finds no basis for imposing liability on Ply Gem in this action. The Court finds no language which clearly evidences an intent to permit enforcement by a third party. *Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.,* 66 N.Y.2d 38, 45, 495 N.Y.S.2d 1, 5, 485 N.E.2d 208, 212 (1985). There is nothing in the language of the guarantee that indicates any intention that it should benefit third parties, such as Pulte, a wholesale purchaser of Hoover's products. Liability of a guarantor is narrowly construed and explicitly created by the language of the guarantee itself. *Key Bank of Long Island v. Burns,* 162 A.D.2d 501, 556 N.Y.S.2d 829 (2d Dep't 1990). The Assets Purchase Agreement states that its provisions "shall be binding and inure to the benefit of the parties hereto, and their respective successors and assigns."

The Court finds that Ply Gem has guaranteed the obligations of Hoover to Universal, and nothing more. Pulte's motion for summary judgment is denied and Ply Gem's motion for summary judgment is granted as to this issue.

(DKT.#: 786, 787, 804, 805, and 833)

2. Whether Johnson Controls, Inc. Assumed the Liabilities of Hoover Universal When Johnson Controls Acquired the Stock of Hoover Universal so as to be Liable for Damages Incurred by Pulte.

(DKT.#: 776, 777, 778, 784, 785, 792, 793, 802, 803, 827, 828, and 832)

It is undisputed that the 1985 Agreement and Plan of Merger among Johnson Controls, Hoover Universal and HVU Acquisition Corp. did not include a merger of Hoover Universal into Johnson Controls (Kennedy Affidavit). Since neither Hoover Universal nor HVU Acquisition Corp. was merged into Johnson Controls, Johnson Controls did not assume their liabilities. Pulte has provided nothing to the Court which establishes anything to

the contrary. The Court grants summary judgment to Johnson Controls on this issue.

ORDERED that all motions for summary judgment, except as hereinbefore noted, be DENIED. All motions for oral argument are DENIED.

DONE and ORDERED.